# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| EMANUELE STEVENS, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | CASE NO. 7:22-cv-00802-NSR |
| PEPSICO INC., BOTTLING GROUP, LLC, CB MANUFACTURING COMPANY, INC., FL TRANSPORTATIONS, INC., FRITO-LAY, INC., GOLDEN GRAIN, INC., GRAYHAWK LEASING, LLC, JUICE TRANSPORT, INC., NEW BERN TRANSPORT CORPORATION, PEPSI NORTHWEST BEVERAGES, LLC, PEPSI-COLA SALES & DISTRIBUTION, INC., PEPSI-COLA BEVERAGE SALES, LLC, PEPSICO SALES, INC., QUAKER MANUFACTURING, LLC, ROLLING FRITO-LAY SALES, LP, SVC MANUFACTURING, INC., TROPICANA MANUFACTURING CO., TROPICANA PRODUCT SALES, INC., TROPICANA SERVICES, INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **PLAINTIFFS' CONSOLIDATED FED. R. CIV. P. 23 CLASS AND FLSA COLLECTIVE ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |
| Defendants. | ) ) | |
| MOISES MADRIZ AND RODNEY ULLOA, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | CASE NO. 1:22-cv-04851-NSR |
| PEPSICO, INC.; NAKED JUICE CO.; NAKED JUICE CO. OF GLENDORA, INC.; TROPICANA PRODUCTS, INC.; TROPICANA SERVICES, INC.,; and DOES #1 through #50, inclusive, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

1

| | |
|---|---|
| RICARDO VIDAUD, individually and on behalf of all others similarly situated, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:22-cv-04850-NSR |
| | ) |
| PEPSICO INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |
| SETH MARSHALL and MATTHEW WHITE, individually and on behalf of all others similarly situated, | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CASE NO. 7:22-cv-02370-NSR |
| | ) |
| PEPSICO INC., BOTTLING GROUP, LLC, and CB MANUFACTURING COMPANY, INC., | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |
| TYRELL KING, individually and on behalf of all others similarly situated, | ) CASE NO. 4:22-cv-00360-KGB |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PEPSICO INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |
| KENNETHA MITCHELL, individually and on behalf of all others similarly situated, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 7:22-cv-04555-NSR |
| | ) |
| PEPSICO INC., | ) |
| | ) |
| Defendant. | ) |

| | |
|---|---|
| DONEDWARD WHITE, individually and on behalf of all others similarly situated, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 7:22-cv-05198-NSR |
| | ) |
| PEPSICO INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |
| JAMAL WINGER, individually and on behalf of all others similarly situated, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:22-cv-04828-NSR |
| | ) |
| THE QUAKER OATS CO., | ) |
| | ) |
| Defendant. | ) |
| | ) |
| ALLISON POULSON, individually and on behalf of all others similarly situated, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 7:22-cv-05196-NSR |
| | ) |
| PEPSICO INC. d/b/a PFS and FRITO-LAY, INC. | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |
| ROBNEY IRVING-MILLENTREE, individually and on behalf of all others similarly situated, | ) |
| | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:22-cv-04784-NSR |
| | ) |
| PEPSICO INC., | ) |
| | ) |
| Defendant. | ) |

| | |
|---|---|
| TRACY ELLIS,<br>individually and on behalf of all others<br>similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>PEPSICO INC.,<br><br>        Defendant. | CASE NO. 7:22-cv-05200-NSR |
| THOMAS PARRISH, individually and on<br>behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>FRITO-LAY NORTH AMERICA, INC. and<br>PEPSICO, INC.<br><br>        Defendants. | CASE NO. 7:22-cv-04556-NSR |
| DEVIN DROBSCH, individually and on<br>behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>PEPSICO INC.,<br><br>        Defendant. | CASE NO. 7:22-cv-04216-NSR |
| JOSHUA SMITH, individually and on behalf<br>of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>PEPSICO INC.,<br><br>        Defendant. | CASE NO. 7:22-cv-04238-NSR |

4

| | |
|---|---|
| JACOB TSCHUDY, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO. 7:22-cv-04212-NSR ) |
| PEPSICO INC., | ) ) |
| Defendant. | ) ) ) |

The above named plaintiffs (hereinafter "Plaintiffs") by and through counsel, file this

Consolidated Class and Collective Action Complaint against the following Defendants:

PEPSICO INC.; BOTTLING GROUP, LLC; CB MANUFACTURING COMPANY, INC.; FL

TRANSPORTATION, INC.; FRITO-LAY, INC.; GOLDEN GRAIN COMPANY;

GRAYHAWK LEASING, LLC; NEW BERN TRANSPORT CORPORATION; PEPSI

NORTHWEST BEVERAGES LLC; PEPSI-COLA SALES & DISTRIBUTION, INC.; PEPSI-

COLA TECHNICAL OPERATIONS, INC.; PEPSI-COLA BEVERAGE SALES LLC;

PEPSICO SALES, INC.; QUAKER MANUFACTURING, LLC, ROLLING FRITO-LAY

SALES, LP; SVC MANUFACTURING, INC.; NEW TIGER LLC, JUICE TRANSPORT, INC.;

TROPICANA MANUFACTURING COMPANY, INC.; TROPICANA PRODUCTS, INC.;

TROPICANA SERVICES, INC.; NAKED JUICE CO. OF GLENDORA, INC. (hereinafter

collectively referred to as "Defendants"), and allege the following

## **INTRODUCTION**

1.      The Fair Labor Standards Act of 1938, as amended (the "FLSA"), 29 U.S.C. §

201, *et seq.* is a broadly remedial and humanitarian statute designed to correct "labor conditions

detrimental to the maintenance of the minimum standard of living necessary for health,

efficiency, and general well-being of workers[,]" 29 U.S.C. § 202(a), as well as "to protect all

covered workers from substandard wages and oppressive working hours." *Barrentine v. Ark Best Freight Sys. Inc*., 450 U.S. 728, 739 (1981). The FLSA required Defendants to pay all non-exempt employees at least one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours each workweek. 29 U.S.C. § 207.  *See also* 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6, 516.7 (provisions relating to required record-keeping); *see also* California Labor Code § 226 (similar state law provision); NY CLS Labor § 195 (same). In addition, pursuant to the common law (including common laws pertaining to unjust enrichment and quantum meruit), and/or as well as state wage acts and implementing regulations in numerous states, employers, such as Defendants, who obtain the benefit of employees' work, and who fail, or intentionally fail to pay an employee wages in conformance with their agreements to pay, or to pay pursuant to statutory wage provisions, are liable to employees for the wages or expenses that were not paid, and, in some instances under state wage laws, liquidated damages, court costs, and attorneys' fees incurred in recovering the unpaid wages (collectively, the "State Labor Laws").[1]  Further, two states, California and New York, have statutory provisions that provide for additional statutory penalties for their failure to provide wage statements, for providing inaccurate wage statements, and for violating unfair competition laws.[2]

---

[1] The following states maintain analogous state overtime laws to the FLSA: Alaska, Arizona, Arkansas, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Virginia, Washington, and Wisconsin. The other states present common law claims.

[2] *See* CAL. LAB. CODE §§ 226, 510, 1194, 1194.5; IWC Wage Orders #1-2001 through #17-2001; Cal. Bus. & Prof. Code §§ 17200 *et seq.*; New York Law, the New York Minimum Wage Act, NY CLS Labor §§ 65, et seq. and New York's Wage Theft Prevention Act, NY CLS Labor §§ 191, *et seq*.

2.      In or about mid-December 2021, Defendants' payroll provider, Ultimate Kronos Group ("Kronos"), was subject to a purported cybersecurity incident.[3]

3.      As a result, Defendants have violated the FLSA as well as State laws relating to or arising out of the Kronos Outage, including all state, local, and federal claims for: unpaid wages (whether minimum wage or overtime), the failure to timely pay wages, the failure to record hours worked, paystub requirements, reimbursement, and all related claims for statutory damages or penalties since approximately mid-December, 2021, after the outset of the Kronos cybersecurity incident.

4.      Plaintiffs bring this case to challenge the policies and practices of Defendants that violate the FLSA and State Labor Laws, as well the pertinent California and New York wage laws.

5.      Plaintiffs bring this case as a nationwide FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and in behalf of himself or themselves and other employees similarly situated" (the "FLSA Collective").

6.      Plaintiffs also bring this case as a class action under Fed. R. Civ. P. 23 on behalf of themselves and other members of a class of persons who assert factually-related claims under the wage-and-hour statutes of the State Labor Laws ("the National Class"), the State of California (the "California Subclass") and the State of New York (the "New York Subclass") (for convenience, the National Class, the California Subclass, and the New York Subclass are referred to herein as the "State Classes").

---

[3] *See* https://www.usatoday.com/story/tech/2021/12/13/kronos-ransomware-attack-2021/6501274001/ (last accessed Jan. 28, 2022).

7.      Plaintiffs and other members of the FLSA Collective, National Class and the State Subclasses now seek to exercise their rights to recover all damages,  additional statutory and liquidated damages, and penalties available in this matter, in addition to prejudgment interest, costs and attorneys' fees incurred in prosecuting this action, and such further relief as the Court deems equitable and just.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

9.      This Court has supplemental jurisdiction over Plaintiffs' State Labor Law claims pursuant to 28 U.S. § 1367 because those claims are so related to the FLSA claims as to form part of the same case or controversy.

10.      Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b) because one or more of the Defendants reside in this district and division.

## PARTIES

11.      Plaintiff Emanuele Stevens is an individual and a resident of Ohio and worked for Defendants and was not paid for all hours worked as a result of the Kronos outage as discussed herein.

12.      Plaintiff Moises Madriz is an individual and resident of California and worked for Defendants and was not paid for all hours worked as a result of the Kronos outage as discussed herein.

13.      Plaintiff Rodney Ulloa is an individual and resident of California and worked for Defendants and was not paid for all hours worked as a result of the Kronos outage as discussed herein.

14.     Plaintiff Ricardo Vidaud is an individual and resident of California and worked for Defendants and was not paid for all hours worked as a result of the Kronos outage as discussed herein.

15.     Plaintiff Jorge Mendoza is an individual and resident of California and worked for Defendants and was not paid for all hours worked as a result of the Kronos outage as discussed herein.

16.     Plaintiff Seth Marshall is an individual and resident of Pennsylvania and worked for Defendants and was not paid for all hours worked as a result of the Kronos outage as discussed herein.

17.     Plaintiff Matthew White is an individual and resident of New York and worked for Defendants and was not paid for all hours worked as a result of the Kronos outage as discussed herein.

18.     Plaintiff Tyrell King is an individual and resident of Arkansas and worked for Defendants and was not paid for all hours worked as a result of the Kronos outage as discussed herein.

19.     Plaintiff Kennetha Mitchell is an individual and resident of Florida and worked for Defendants and was not paid for all hours worked as a result of the Kronos outage as discussed herein.

20.     Plaintiff Donedward White is an individual and resident of Illinois and worked for Defendants and was not paid for all hours worked as a result of the Kronos outage as discussed herein.

21.     Plaintiff Jamal Winger is an individual and resident of Indiana and worked for Defendants and was not paid for all hours worked as a result of the Kronos outage as discussed herein.

22.     Plaintiff Allison Poulson is an individual and resident of Indiana and worked for Defendants and was not paid for all hours worked as a result of the Kronos outage as discussed herein.

23.     Plaintiff Robney Irving-Millentree is an individual and resident of Missouri and worked for Defendants and was not paid for all hours worked as a result of the Kronos outage as discussed herein.

24.     Plaintiff Tracy Ellis is an individual and resident of New Jersey and worked for Defendants and was not paid for all hours worked as a result of the Kronos outage as discussed herein.

25.     Plaintiff Thomas Parrish is an individual and resident of New York and worked for Defendants and was not paid for all hours worked as a result of the Kronos outage as discussed herein.

26.     Plaintiff Devin Dobsch[4] is an individual and resident of Pennsylvania and worked for Defendants and was not paid for all hours worked as a result of the Kronos outage as discussed herein.

27.     Plaintiff Joshua Smith is an individual and resident of Virginia and worked for Defendants and was not paid for all hours worked as a result of the Kronos outage as discussed herein.

---

[4] Dobsch's name was errantly misspelled as "Drobsch" on his case's initial filing.

28.    Plaintiff Jacob Tschudy is an individual and resident of Wisconsin and worked for Defendants and was not paid for all hours worked as a result of the Kronos outage as discussed herein.

29.    Defendant PepsiCo Inc. is a North Carolina for-profit corporation with its principal executive office address at 700 Anderson Hill Road, Purchase, New York, 10577.

30.    Defendant Bottling Group, LLC is a Delaware for-profit corporation with its principal executive office address at 700 Anderson Hill Road, Purchase, New York, 10577.

31.    Defendant CB Manufacturing Company, Inc. is a Delaware for-profit corporation with its principal executive office address at 700 Anderson Hill Road, Purchase, New York, 10577.

32.    Defendant FL Transportation, Inc. is a Delaware for-profit corporation with its principal executive office address at 7701 Legacy Drive, Plano, Texas, 75024.

33.    Defendant Frito-Lay, Inc. is a Delaware for-profit corporation with its principal executive office address at 7701 Legacy Drive, Plano, Texas, 75024.

34.    Defendant Golden Grain Company is a California for-profit corporation with its principal executive office address at 700 Anderson Hill Road, Purchase, New York, 10577.

35.    Defendant Grayhawk Leasing, LLC is a Delaware for-profit corporation with its principal executive office address at 700 Anderson Hill Road, Purchase, New York, 10577.

36.    Defendant Juice Transport, Inc. is a Delaware for-profit corporation with its principal executive office address at 433 W. Van Buren Street, Suite 3N, Chicago, IL 60607.

37.    Defendant New Bern Transport Corporation is a Delaware for-profit corporation with its principal executive office address at 700 Anderson Hill Road, Purchase, New York, 10577.

38.     When suit was originally filed against New Bern Transport Corporation in *Vidaud v. PepsiCo, Inc. et al.*, the true name of New Bern Transport Corporation was not known to the *Vidaud* Plaintiffs, and they were sued under the fictitious name of "Doe #1."

39.     The *Vidaud* Plaintiffs now amend their Complaint to sue New Bern Transport Corporation in its true name.

40.     Defendant Pepsi Northwest Beverages LLC is a Delaware for-profit corporation with its principal executive office address at 3003 R.W. Johnson Blvd. Tumwater, WA 98512.

41.     Defendant Pepsi-Cola Sales & Distribution, Inc. is a Delaware for-profit corporation with its principal executive office address at 700 Anderson Hill Road, Purchase, New York, 10577.

42.     Defendant Pepsi-Cola Technical Operations, Inc. is a Delaware for-profit corporation with its principal executive office address at 700 Anderson Hill Road, Purchase, New York, 10577.

43.     Defendant Pepsi-Cola Beverage Sales LLC is a Delaware for-profit corporation with its principal executive office address at 700 Anderson Hill Road, Purchase, New York, 10577.

44.     Defendant PepsiCo Sales, Inc. is a Delaware for-profit corporation with its principal executive office address at 700 Anderson Hill Road, Purchase, New York, 10577.

45.     Defendant Quaker Manufacturing, LLC is a Delaware for-profit corporation with its principal executive office address at 700 Anderson Hill Road, Purchase, New York, 10577.

46.     Defendant Rolling Frito-Lay Sales, LP is a Delaware for-profit corporation with its principal executive office address at 7701 Legacy Drive, Plano, Texas, 75024.

47.     Defendant SVC Manufacturing, Inc. is a Delaware for-profit corporation with its principal executive office address at 700 Anderson Hill Road, Purchase, New York, 10577.

48.     Defendant New Tiger LLC is a Delaware for-profit corporation with its principal executive office address at 433 W. Van Buren Street, Suite 3N, Chicago, IL 60607.

49.     Defendant Tropicana Manufacturing, Inc. is a Delaware for-profit corporation with its principal executive office address at 433 W. Van Buren Street, Suite 3N, Chicago, IL 60607.

50.     Defendant Tropicana Products, Inc. is a Delaware for-profit corporation with its principal executive office address at 433 W. Van Buren Street, Suite 3N, Chicago, IL 60607.

51.     Defendant Tropicana Services, Inc. is a Florida for-profit corporation with its principal executive office address at 433 W. Van Buren Street, Suite 3N, Chicago, IL 60607.

52.     Defendant Naked Juice Co. of Glendora, Inc. is a California for-profit corporation with its principal executive office address at 433 W. Van Buren Street, Suite 3N, Chicago, IL 60607.

53.     The *Madriz* Plaintiffs are informed and believe and on that basis allege, that at all relevant times the *Madriz* Defendants and *Madriz* Defendants Does #1 through #50 were affiliated, and each was the principal, agent, servant, partner, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor or predecessor in interest, joint ventures, and/or joint enterprises of one or more of Defendants.

54.     The *Madriz* Defendants and *Madriz* Defendants Does #1 through #50 employed and/or jointly employed the *Madriz* Plaintiffs and members of the California Subclass.

55.     The *Madriz* Defendants and *Madriz* Defendants Does #1 through #50 are joint employers for purposes of California law.

13

56.     The *Madriz* Plaintiffs are unaware of the true names of *Madriz* Defendants Does #1 through #50, and so the *Madriz* Plaintiffs sue those Defendants under said fictitious names pursuant to California Code of Civil Procedure section 474. *Lindley v. Gen. Elec. Co.*, 780 F.2d 797, 802 (9th Cir. 1986).

57.     The *Madriz* Plaintiffs will amend this Complaint to show the true names and capacities of such fictitiously named Defendants after the same has been ascertained.

58.     Because the true names of *Madriz* Defendants Does #1 through #50 are currently unknown to them, the *Madriz* Plaintiffs refer to such Defendants in this lawsuit collectively with their non-fictitiously named joint employers as "Defendants" throughout this Complaint.

59.     The *Vidaud* Plaintiffs are informed and believe and on that basis allege, that at all relevant times the *Vidaud* Defendants and *Vidaud* Defendants Does #1 through #50 were affiliated, and each was the principal, agent, servant, partner, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor or predecessor in interest, joint ventures, and/or joint enterprises of one or more of Defendants.

60.     The *Vidaud* Defendants and *Vidaud* Defendants Does #2 through #50 employed and/or jointly employed the *Vidaud* Plaintiffs and California Subclass.

61.     The *Vidaud* Defendants and *Vidaud* Defendants Does #2 through #50 are joint employers for purposes of California law.

62.     The *Vidaud* Plaintiffs are unaware of the true names of *Vidaud* Defendants Does #1 through #50, and so the *Vidaud* Plaintiffs sue those Defendants under said fictitious names pursuant to California Code of Civil Procedure section 474. *Lindley v. Gen. Elec. Co.*, 780 F.2d 797, 802 (9th Cir. 1986).

63.     The *Vidaud* Plaintiffs will amend this Complaint to show the true names and capacities of such fictitiously named Defendants after the same has been ascertained.

64.     Because the true names of *Vidaud* Defendants Does #2 through #50 are currently unknown to them, the *Vidaud* Plaintiffs refer to such Defendants in this lawsuit collectively with their non-fictitiously named joint employers as "Defendants" throughout this Complaint.

## FACTUAL ALLEGATIONS

### Defendants' Business and Defendants' Statuses as Employers

65.     Defendant PepsiCo Inc. is a multinational firm whose "products are [used] by consumers more than one billion times a day in more than 200 countries and territories around the world."[5] PepsiCo generated $70 billion in net revenue in 2020, and owns and distributes brands such as "Lays, Doritos, Cheetos, Gatorade, Pepsi-Cola, Mountain Dew, Quaker, and SodaStream… including many iconic brands that generate more than $1 billion each in estimated annual retail sales."[6]

66.     The other named defendants are the various divisions and subsidiaries of PepsiCo, Inc.  As relevant to the claims herein, the use of Kronos by Defendants and the responses to the Kronos outage by Defendants, were materially the same as to all Defendants inasmuch as they were all the product of centralized decisions and implementing actions formulated and directed by, and the product of, PepsiCo, Inc.

67.     Defendants were the "employer" of Plaintiffs and other members of the FLSA Collective and State Classes within the meaning of the FLSA, 29 U.S.C. § 203(d), and pertinent state laws.

---

[5] https://www.pepsico.com/about/about-the-company (last accessed Jan. 28, 2022.)
[6] *Id.*

68.     At all times relevant herein, Defendants have jointly employed Plaintiffs and the putative FLSA Collective and State Classes members and have been employers within the meaning of Section 3(d) of the FLSA (29 U.S.C. § 203(d)) and pertinent state laws.

69.     Defendants utilize non-exempt hourly employees, including Plaintiffs and other members of the FLSA Collective and State Classes, in furtherance of their business purposes.

70.     At all times relevant, Defendants were an enterprise within the meaning of 29 U.S.C. § 203(r).

71.     At all times relevant, Defendants were an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

72.     Defendants operate and control an enterprise engaged in commerce, with annual gross volume of business exceeding $500,000.00.

73.     Defendants were each employers of Plaintiffs and other members of the FLSA Collective and State Classes inasmuch as each Defendant exercised the power to hire or fire employees; supervised and controlled the employees' work or conditions of employment; determined employees' rates and methods of payment; and maintained or were required to maintain records, including employment records.

### Defendants' Status as a "Single Employer" and "Single Enterprise"

74.     At all times relevant, Defendants were an enterprise within the meaning of 29 U.S.C. § 203(r). That is, Defendants perform related activities through unified operation and common control for a common business purpose; namely, the provision of Pepsi and related brands' products throughout the United States and internationally. Defendants were individually and jointly "employers" within the meaning of the FLSA and pertinent state law.

75. At all times relevant, Plaintiffs and other members of the FLSA Collective and State Classes were "employees" of Defendants.

76. Defendants are engaged in related activities, *i.e.* all activities which are necessary to the operation and maintenance of Defendants' business.

77. Defendants provide the same or similar array of products and services.

78. Defendants share common ownership under PepsiCo, Inc as subsidiaries and affiliates of the same.

79. Defendants share operational control over significant aspects of the day-to-day functions of Plaintiffs and other members of the FLSA Collective and State Classes, including, as here relevant, controlling conditions of employment relative to time keeping and pay.

80. Defendants shared control and maintenance of employment records.

81. Defendants have shared and mutually benefitted from the work and services performed by Plaintiffs and other members of the FLSA Collective and State Classes.

82. Defendants have not acted entirely independently of each other and have not been completely disassociated with respect to Plaintiffs and other members of the FLSA Collective and State Classes.

83. Defendants acted directly or indirectly in the interest of each other in relation to Plaintiffs and other members of the FLSA Collective and State Classes.

84. Defendants constitute a unified operation because they have organized the performance of their related activities so that they are an organized business system which is an economic unit directed to the accomplishment of a common business purpose.

85. Defendants provide the same services and products to customers by using a set formula when conducting business.

86.     Part of that set formula is the deprivation of accurate and timely compensation and wage statements to their employees as outlined in this Complaint.

### Plaintiffs', the FLSA Collective's, and California, and New York Subclasses' Non-Exempt Employment Status with Defendants

87.     Defendants classify and pay Plaintiffs, as well as other members of the FLSA Collective and State Classes, as nonexempt hourly employees.

88.     At all times relevant, Plaintiffs and other members of the FLSA Collective and State Classes were employees within the meaning of 29 U.S.C. § 203(e) and pertinent state law.

89.      At all times relevant, Plaintiffs and other members of the FLSA Collective and State Classes were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 207.

### Defendants' Failure to Timely and Accurately Pay Employees Compensation

90.     The FLSA, State Labor Laws, and California and New York law required Defendants to pay their employees for all the hours they worked, including hours in excess of forty (40), for which, under the FLSA and many State laws, overtime pay was required.

91.     Plaintiffs and other members of the FLSA Collective and the State Classes frequently worked more than forty (40) hours in a single workweek.

92.     Defendants failed to pay Plaintiffs and other members of the FLSA Collective and the State Classes in a timely and accurate manner for all hours, including overtime hours, that they worked.

93.     Defendants accepted the benefit of Plaintiffs labor and work and shortchanged their hourly employees and failed to pay compensation for the regular hours worked and for all hours worked in excess of forty (40) hours per workweek in a timely and accurate manner.

94.     Defendants' unlawful time payment policies as highlighted above denied

Plaintiffs and other members of the FLSA Collective and the State Classes compensable hourly

compensation and overtime compensation they were entitled to be paid each pay period. Had

Defendants kept accurate timekeeping and payroll records in compliance with the FLSA and

Department of Labor regulations, and State laws, including but not limited to by maintaining the

records in a manner that was "safe and accessible at the place or places of employment, or at one

or more established central recordkeeping offices where such records are customarily

maintained," 29 C.F.R. § 516.7, Plaintiffs and other members of the FLSA Collective and the

State Classes would have been compensated for all hours worked and additional overtime hours

during the pay period in which the work was performed.

95.     As a direct and proximate result of Defendants' failure to keep accurate

timekeeping and payroll records in compliance with the FLSA and Department of Labor

regulations, including but not limited to by maintaining the records in a manner that was "safe

and accessible at the place or places of employment, or at one or more established central

recordkeeping offices where such records are customarily maintained," 29 C.F.R. § 516.7,

Defendants failed to pay all compensation due to all non-exempt employees, including at least

one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours

each workweek, in an accurate and timely manner. 29 U.S.C. § 207. Instead, Defendants

calculated and paid wages during the Class Period by averaging the hours worked in the weeks

prior to the mid-December 2021 Kronos purported cybersecurity incident. While Plaintiffs, for

example, and other members of the FLSA Collective and State Classes, worked significant

amounts of overtime hours during the holiday season of December, 2021 and throughout the

Class Period, Defendants have failed to pay Plaintiffs and other members of the FLSA Collective and the State Classes for all hours worked, including overtime hours. 29 U.S.C. § 207.

96.     Defendants' illegal overtime compensation pay practices, including the decision to calculate regular wages and overtime wages based on a formula that does not consider actual overtime worked, were the result of systematic and company-wide policies originating at the management level.

97.     Defendants' failure to compensate Plaintiffs and other members of the FLSA Collective and the State Classes for all hours worked, including all hours worked more than forty (40) hours per week at constitutes a knowing and willful violation of the FLSA, 29 U.S.C. § 207 and corresponding state common and statutory laws.

**Defendants' Record Keeping Violations**

98.     The FLSA and State Labor Laws, including California and New York law, required Defendants to maintain accurate and complete records of employees' time worked and amounts paid. For example, federal regulations require employers to make and keep payroll records showing information and data such as the employee's name, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime compensation is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period and date of payment and pay period covered by the payment. 29 C.F.R. § 516.2.

99.     Department of Labor regulations specifically required Defendants to maintain the records in a manner that was "safe and accessible at the place or places of employment, or at one or more established central recordkeeping offices where such records are customarily

maintained." 29 C.F.R. § 516.7. To the extent that Defendants maintained the records at a central recordkeeping office, other than in the place or places of employment, these records were required to be available within 72 hours. *Id.*

100.    California and New York law contain similar requirements.

101.    Defendants failed to keep accurate records of hours worked. Thus, Defendants did not record or pay all hours worked in violation of the FLSA, State Labor Laws, and California and New York law.

<u>**The Willfulness of Defendants' Violations**</u>

102.    Defendants knew that Plaintiffs and other members of the FLSA Collective and State Classes were entitled to overtime compensation under federal and state law or acted in reckless disregard for whether they were so entitled.

103.    Defendants' executive, calculated decision to pay wages by averaging the hours worked in the weeks prior to the mid-December 2021 Kronos purported cybersecurity incident, a policy and practice that inherently does not consider Plaintiffs' and other members of the FLSA Collective's and State Classes' actual overtime hours worked constitutes a knowing and willful violation of the FLSA and state law.

104.    In addition, by denying Plaintiffs and other members of the FLSA Collective and State Classes overtime compensation as required by the FLSA, State Labor Laws, and California and New York law, Defendants' acts were not based upon good faith. Through legal counsel as well as industry experience and custom, Defendants possessed ample access to the regulations and statutory provisions requiring the proper and prompt payment of overtime compensation under the provision of laws recited in this Complaint, but either failed to seek out such information and guidance or did seek out the information and guidance but failed to adhere to the

21

principles of compliance as required. Defendants therefore knew about the overtime

compensation requirements of the FLSA and state law or acted in reckless disregard as to

Defendants' obligations under the FLSA and state law.

105.    The above payroll practices resulted in knowing and willful overtime violations of

the FLSA, 29 U.S.C. §§ 201-219; and state law.

### COLLECTIVE/CLASS ACTION ALLEGATIONS
### (FLSA Collective and State Labor Law Class)

106.    Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten

herein.

107.    Plaintiffs bring this case as an FLSA "collective action" pursuant to 29 U.S.C. §

216(b), and on behalf themselves, and as to the State Labor Law Class, as a class action for

claims under the State Labor Laws pursuant to Fed. R. Civ. P. 23.

108.    The FLSA claims may be pursued by those who opt-in to this case pursuant to 29

U.S.C. § 216(b). The claims under the State Labor Laws may be pursued by all similarly situated

persons who choose not to opt-out of the State Labor Law Class pursuant to Fed. R. Civ. P. 23.

109.    The FLSA Collective and National Class consists of:

All current and former employees of Defendants in the United States during the seventeen
weekly pay periods between December 5, 2021, and April 8, 2022, who were impacted by
the Kronos Outage.  An employee was impacted by the Kronos Outage if that employee
received an inaccurate pay stub or inaccurate compensation at any time during the Class
Period, regardless of whether that employee's compensation paid during the Kronos
Outage as compared to compensation owed for the Kronos Outage time period resulted in
a net positive (overpayment), net neutral, or net negative (underpayment) to that employee.

110.    The members of the FLSA Collective are "similarly situated" with respect to

Defendants' FLSA and State Law violations in that all were non-exempt employees of

Defendants, all were unlawfully impacted by the Kronos Outage, and all have the same claims

against Defendants for inaccurate compensation and overtime compensation as well as for inaccurate wage statements, liquidated damages, attorneys' fees, and costs.

111.    Conditional certification of the FLSA Collective pursuant to 29 U.S.C. § 216(b) is proper and necessary so that such persons may be sent a Court-authorized notice informing them of the pendency of this action and giving them the opportunity to "opt in."

112.    The FLSA Collective (and the National Class) consists of 69,809 employees. Such employees are readily identifiable through the payroll records Defendants have maintained, and were required to maintain, pursuant to the FLSA.

113.    Furthermore, there is a well-defined community of interest in the questions of law and fact affecting the members of the National Class.  The questions of law and fact common to the members of the National Class predominate over any questions affecting solely the individual members.  Among the common questions of law and fact are:

> Whether Defendants' conduct as described above violates State Labor Laws requiring the timely payment of hourly and overtime compensation; and

> What amount of damages Plaintiffs and the members of the National Class are entitled to due to Defendants' violations of State Labor Laws.

114.    Plaintiffs' claims are typical of the claims of members of the National Class. Plaintiffs, and members of the National Class, have sustained damages arising out of Defendants' failure to timely and accurately pay them due to the Kronos Outage in violation of State Labor Laws.

115.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation as a class action.

## CLASS ACTION ALLEGATIONS
### (California and New York Subclasses)

### California Subclass

116.     Plaintiffs Madriz, Ulloa, Vidaud, and Mendoza (the "California Plaintiffs")

incorporate by reference the foregoing allegations as if fully rewritten herein.

117.     The California Plaintiffs also bring this case as a class action pursuant to Fed. R.

Civ. P. 23 on behalf of themselves and other members of a subclass of members of the National

Class who assert claims under the labor laws of the State of California (the "California

Subclass"), defined as:

> All current and former employees of Defendants in California during the
> seventeen weekly pay periods between December 5, 2021, and April 8, 2022, who
> were impacted by the Kronos Outage.  An employee was impacted by the Kronos
> Outage if that employee received an inaccurate pay stub or inaccurate
> compensation at any time during the Class Period, regardless of whether that
> employee's compensation paid during the Kronos Outage as compared to
> compensation owed for the Kronos Outage time period resulted in a net positive
> (overpayment), net neutral, or net negative (underpayment) to that employee.

118.     The California Subclass is so numerous that joinder of all class members is

impracticable because there are 7,762 members of this subclass.  Their identities are

ascertainable from the payroll and personnel records Defendants have maintained, and were

required to maintain, pursuant to the FLSA and California law.

119.     There are questions of law or fact common to the members of the California

Subclass, including but not limited to:

120.     Whether Defendants' conduct as described above violated California Labor

Laws requiring the timely payment of hourly and overtime compensation;

121.     Whether Defendants' conduct as described above violated California Labor

Laws requiring that accurate wage statements be provided in a timely manner;

122.    What amount of amount of damages and penalties the California Plaintiffs and the members of the California Subclass are entitled to due to Defendants' violations of California Labor Laws.

123.    The California Plaintiffs' claims are typical of the claims of members of the California Subclass as they arise out of the same uniform course of conduct by Defendants, and are based on the same legal theories, as the claims of the California Subclass members.

124.    The California Plaintiffs will fairly and adequately protect the interests of the California Subclass.  The interest of the California Plaintiffs are not antagonistic to, but rather are in unison with, the interests of the members of the California Subclass. Plaintiffs' counsel have broad experience in handling class action litigation, including wage-and-hour litigation, and are fully qualified to prosecute the claims of the California Subclass in this case.

125.    The questions of law or fact that are common to the California Subclass predominate over any questions affecting only individual members. The common questions described above, will determine Defendants' liability to the California Plaintiffs and members of the California Subclass and the amount of damages and penalties they are owed and will predominate over any questions affecting only individual California Subclass members.

126.    Certifying the California Subclass is superior to other available methods for the fair and efficient adjudication of the claims of all the members of the California Subclass. Requiring California Subclass members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many California Subclass members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually.

Certification of this Subclass pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all subclass members with the efficiencies of class litigation.

## New York Subclass

127.    Plaintiffs Marshall, Matthew White, and Parrish (the "New York Plaintiffs") incorporate by reference the foregoing allegations set forth in paragraphs 1 through 104, as if fully rewritten herein.

128.     The New York Plaintiffs also bring this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and other members of a subclass of members of the National Class who assert claims under the labor laws of the State of New York (the "New York Subclass"), defined as:

> All current and former employees of Defendants in New York during the seventeen weekly pay periods between December 5, 2021, and April 8, 2022, who were impacted by the Kronos Outage.  An employee was impacted by the Kronos Outage if that employee received an inaccurate pay stub or inaccurate compensation at any time during the Class Period, regardless of whether that employee's compensation paid during the Kronos Outage as compared to compensation owed for the Kronos Outage time period resulted in a net positive (overpayment), net neutral, or net negative (underpayment) to that employee.

129.    The New York Subclass is so numerous that joinder of all class members is impracticable because there are 2,766 members of this subclass.  Their identities are ascertainable from the payroll and personnel records Defendants have maintained, and were required to maintain, pursuant to the FLSA and California law.

130.    There are questions of law or fact common to the members of the New York Subclass, including but not limited to:

131.    Whether Defendants' conduct as described above violated New York Labor Laws requiring the timely payment of hourly and overtime compensation;

132.    Whether Defendants' conduct as described above violated New York Labor Laws requiring that accurate wage statements be provided in a timely manner;

133.    What amount of amount of damages and penalties the New York Plaintiffs and the members of the New York Subclass are entitled to due to Defendants' violations of New York Labor Laws.

134.    The New York Plaintiffs' claims are typical of the claims of members of the New York Subclass as they arise out of the same uniform course of conduct by Defendants, and are based on the same legal theories, as the claims of the New York Subclass members.

135.    The New York Plaintiffs will fairly and adequately protect the interests of the New York Subclass.  The interest of the New York Plaintiffs are not antagonistic to, but rather are in unison with, the interests of the members of the New York Subclass. Plaintiffs' counsel have broad experience in handling class action litigation, including wage-and-hour litigation, and are fully qualified to prosecute the claims of the New York Subclass in this case.

136.    The questions of law or fact that are common to the New York Subclass predominate over any questions affecting only individual members. The common questions described above, will determine Defendants' liability to the New York Plaintiffs and members of the New York Subclass and the amount of damages and penalties they are owed and will predominate over any questions affecting only individual New York Subclass members.

137.    Certifying the New York Subclass is superior to other available methods for the fair and efficient adjudication of the claims of all the members of the New York Subclass. Requiring New York Subclass members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many New York Subclass members' claims are sufficiently small that they would be

reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this Subclass pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all subclass members with the efficiencies of class litigation.

## COUNT ONE
### (FLSA Wage Payment Violations)

138.    Plaintiffs incorporate by reference the foregoing allegations of paragraphs 1 to 136 as if fully rewritten herein.

139.    Plaintiffs bring this claim for violation of the FLSA's requirements for the timely payment of hourly and overtime compensation on behalf of themselves and members of the FLSA Collective who may join this case pursuant to 29 U.S.C. § 216(b).

140.    The FLSA requires that employers pay their employees their wages, including any earned overtime, on the regular payday for the pay period in which they worked those hours.

141.    The FLSA also requires that "non-exempt" employees receive overtime compensation of "not less than one and one-half times" the employees' "regular rate" of pay for all hours worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207(a)(1).

142.    Plaintiffs and other members of the FLSA Collective should have been paid their hourly wages and overtime wages each regular pay day.

143.    Defendants, however, failed to do so.

144.    Defendants knowingly, willfully, and/or in reckless disregard carried out an illegal pattern and practice of failing to pay Plaintiffs and other members of the FLSA Collective their due compensation each regular pay day. Defendants' failure to pay their due hourly and overtime compensation to Plaintiffs and other members of the FLSA Collective was neither reasonable, nor was the decision not to pay overtime made in good faith. By engaging in these

practices, Defendants willfully violated the FLSA and regulations thereunder that have the force of law.

145.     As a result of Defendants' violations of the FLSA, Plaintiffs and other members of the FLSA Collective were injured in that they did not receive wages due to them in a timely manner.  29 U.S.C. § 216(b) entitles Plaintiffs and other members of the FLSA Collective to an award of "unpaid overtime compensation" as well as "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) further provides that "[t]he court … shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

## COUNT TWO
### (State Law Wage Payment Violations)

146.     Plaintiffs incorporate by reference the foregoing allegations of paragraphs 1 through 136 as if fully rewritten herein.

147.     Defendants' failure to timely pay Plaintiffs, and members of the National Class, compensation for all hours worked, including overtime hours, for work performed beyond the 40-hour workweek is a violation of the State Labor Laws.

148.     Due to Defendants' violations of the State Labor Laws, Plaintiffs, on behalf of themselves and members of the State Class, are entitled to recover from Defendants unpaid overtime compensation, all applicable statutory damages, reasonable attorneys' fees and costs and disbursements of this action, pursuant to the State Labor Laws.

## COUNT THREE
### (California Waiting Time Penalties)
### (Brought on Behalf of the California Subclass)

149.     The California Plaintiffs incorporate by reference the foregoing allegations of paragraphs 1 through 125, as if fully rewritten herein.

150.    At all relevant times, Defendants were required to pay the California Plaintiffs and the California Subclass all wages owed in a timely fashion at the end of employment pursuant to California Labor Code sections 201 to 204.

151.    As a result of Defendants' alleged California Labor Code violations, Defendants failed to pay the California Plaintiffs and the California Subclass their final wages pursuant to California Labor Code sections 201 to 204, and accordingly Defendants owe waiting time penalties pursuant to California Labor Code section 203.

152.    The conduct of Defendants, in violation of the California Plaintiffs and the California Subclass members' rights was willful and was undertaken by the agents, employees, and managers of Defendants.

153.    Defendants' willful failure to provide the California Plaintiffs and the California Subclass the wages due and owing them upon separation from employment results in a continuation of wages up to 30 days from the time the wages were due.

154.    Therefore, the California Plaintiffs Madriz, Ulloa, Vidaud, Mendoza and the California Subclass who have separated from employment are entitled to compensation pursuant to California Labor Code section 203.

### COUNT FOUR
**(Failure to Pay Wages Under California Law)**
**(Brought on Behalf of the California Subclass)**

155.    The California Plaintiffs incorporate by reference the foregoing allegations of paragraphs 1 through 125, as if fully rewritten herein.

156.    The California Labor Code requires that all employees, including the California Plaintiffs and the members of the California Subclass, receive 1.5x their hourly rate as overtime

premium compensation for hours worked over eight in one day. CAL. LAB. CODE § 510 (2017); IWC Wage Orders #1-2001 through #17-2001.

157.    Despite working over 8 hours a day as part of their normal and regular shift, the California Plaintiffs and the California Subclass did not receive proper overtime compensation for all hours worked over 8 in one day.

158.    The California Labor Code also requires that all employees, including the California Plaintiffs and the California Subclass, receive 2x the overtime premium compensation for hours worked over 12 in one day, in the seventh day of a workweek. CAL. LAB. CODE § 510, 551-52 (2017); IWC Wage Orders #1-2001 through #17-2001.

159.    Although the California Plaintiffs and the California Subclass regularly worked seven days a week, for at least 12 hours a day, they did not receive the "double time" compensation required by California law for all hours over eight worked on the seventh day.

160.    This pattern, practice, and uniform administration of corporate policy regarding illegal employee compensation is unlawful and entitles the California Plaintiffs and the California Subclass to recover the unpaid balance of the full amount of overtime wages owing, including liquidated damages, interest, attorneys' fees, and costs of suit pursuant to California Labor Code section 1194.

**COUNT FIVE**
**(Violations of California's Wage Statement and Record Keeping Requirements)**
**(Brought on Behalf of the California Subclass)**

161.    The California Plaintiffs incorporate by reference the foregoing allegations of paragraphs 1 through 125, as if fully rewritten herein.

162.   California Labor Code section 226(a) requires Defendants to provide an accurate itemized wage statement each time wages are paid showing, *inter alia*, showing (1) gross wages earned, (2) total hours worked by the employee.

163.   California Labor Code section 226(b) requires Defendants to keep accurate records regarding the information required by subsection (a) so that it can provide that information to the California Plaintiffs and Subclass with their wage payment.

164.   Defendants failed to provide accurate wage statements to the California Plaintiffs and California Subclass with their wages and did not maintain accurate records of the California Plaintiffs and Subclass's daily hours, gross wages earned, net wages earned, and the applicable hourly rates during the Class Period.

165.   This pattern, practice, and uniform administration of corporate policy is unlawful and entitles the California Plaintiffs  and the California Subclass to recover all damages and penalties available by law, including interest, penalties, attorneys' fees, and costs of suit. CAL. LAB. CODE § 226(e).

## COUNT SIX
### (Violation of California Unfair Competition Law)
### (Brought on Behalf of the California Subclass)

166.   The California Plaintiffs incorporate by reference the foregoing allegations of paragraphs 1 through 125 as if fully rewritten herein.

167.   Defendants have engaged, and continue to engage, in unfair and unlawful business practices in California by practicing, employing, and utilizing the employment practices outlined above by knowingly denying employees: (1) overtime wages required by California law; (2) accurate wage statements; and (3) waiting time penalties.

168.    As a result of Defendants' failure to comply with California law, Defendants have also violated the California Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200, et seq., which prohibits unfair competition by prohibiting any unlawful or unfair business actions or practices.

169.    The relevant acts by Defendants occurred within the four years preceding the filing of this action.

170.    On information and belief, Defendants have engaged in unlawful, deceptive, and unfair business practices, pursuant to California's Business and Professions Code section 17200, et seq., including those set forth above, depriving the California Plaintiffs and the California Subclass of minimum working condition standards and conditions under California law and IWC Wage Orders as set forth above.

171.    The California Plaintiffs and the California Subclass are entitled to restitution for at least the following: restitution for unpaid overtime wages and unpaid California Labor Code § 203 continuation wages.

172.    Defendants are also liable for fees and costs pursuant to California Code of Civil Procedure 1021.5 and other applicable law.

<u>**COUNT SEVEN**</u>
**(Civil Penalties Under PAGA)**
**(Brought by** the California Plaintiffs, as representatives of the LWDA, **on Behalf of the California Subclass)**

173.    The California Plaintiffs incorporate by reference the foregoing allegations of paragraphs 1 through 125 and 148 through 171, as if fully rewritten herein.

174.    The California Plaintiffs and the California Subclass are aggrieved employees within the meaning of California Labor Code Section 2699.

175.     As aggrieved employees, the California Plaintiffs, as representatives of the California Labor and Workforce Development Agency (LWDA), on behalf of the California Subclass, seek to recover civil penalties against Defendants pursuant to the Private Attorneys General Act of 2004 (PAGA), CAL. LAB. CODE §§ 2698 *et seq.*

176.     Defendants have knowingly and intentionally violated the California Labor Code and IWC Wage Orders, including by:

    a.   Failing to pay wages (CAL. LAB. CODE §§ 510, 1194.5; IWC Wage Orders #1-2001 through #17-2001);

    b.   Violating record keeping requirements (CAL. LAB. CODE § 226);

    c.   Unlawfully collecting, receiving, or withholding wages (CAL. LAB. CODE §§ 221, 225.5);

    d.   Failing to pay wages promptly following termination of employment, or when due and payable (CAL. LAB. CODE § 203).

177.     The civil penalties sought by the California Plaintiffs, on behalf of themselves and the California Subclass, include the recovery of amounts specified in the respective sections of the California Labor Code, and if not specifically provided, those penalties under section 2699(f).

178.     The California Plaintiffs, on behalf of themselves and the California Subclass, seek the full amounts sufficient to recover unpaid wages, other damages, and necessary expenditures or losses incurred by the California Plaintiffs and the California Subclass pursuant to California Labor Code sections 210, 225.5, 226.3, 226.8, 558(a), 1197(a), 2802, and 2699.

179.     The California Plaintiffs, on behalf of themselves and the California Subclass, will allege any additional violations of the California Labor Code and IWC Wage Orders as may be disclosed in discovery and as a result of additional investigation that may be pursued in this action.

180.     The California Plaintiffs provided timely notice to Defendants of its California Labor Code and IWC Wage Orders violations.

181.     On the same date, notice of these California Labor Code and IWC Wage Orders violations was provided to the LWDA, as required by PAGA.

182.     The notice to Defendants and the LWDA advised each of them of the intent to prosecute a private enforcement action to assess and recover civil penalties under PAGA if the LWDA declines to investigate or prosecute the asserted California Labor Code and IWC Wage Orders violations.

183.     If the LWDA declines to investigate or prosecute, the California Plaintiffs and the California Subclass will pursue their PAGA claims in the course of this action.

184.     The California Plaintiffs have had to retain counsel to file this action to protect the interests of themselves and the California Subclass and to assess and collect the civil penalties owed by Defendants to themselves and the California Subclass.

185.     The California Plaintiffs, on behalf of the LWDA, have incurred attorneys' fees and costs in prosecuting this action to recover under PAGA for themselves and the California Subclass.

## **COUNT EIGHT**
### **(Failure to Pay Wages In a Timely Manner )**
### **(Brought on Behalf of the New York Subclass)**

186.     The New York Plaintiffs incorporate by reference the foregoing allegations of paragraphs 1 through 114 and 126 through 136, as if fully rewritten herein.

187.     Pursuant to the New York Labor Law, each employer shall pay all nonexempt employees for all hours worked, and one and one-half times the regular rate of pay for all hours worked over forty (40) per workweek.

188.     The New York Plaintiffs and the New York Subclass are non-exempt employees entitled to pay for all hours worked and overtime compensation for all hours worked in excess of forty (40) per workweek.

189.     The New York Plaintiffs and the New York Subclass did not receive accurate or timely hourly compensation and overtime compensation from Defendants during the Kronos outage period that reflected the actual hours they worked in each pay period.

190.     Defendants have failed to compensate New York Plaintiffs and the New York Subclass for all hours and overtime hours they worked during the outage period, as required by the applicable provisions of the New York Wage Acts.

191.     Pursuant to the New York Wage Acts, employers, such as Defendants, who fail to pay an employee wage in conformance with the law or to pay the proper amount of pay promptly, shall be liable to the employee for the wages or expenses that were not paid, liquidated damages equal to the full amount of wages owed, pre-judgment interest at the annual rate of 9 percent, court costs, and attorneys' fees incurred in recovering the unpaid wages.

192.     There is no bona fide dispute that the New York Plaintiffs and the New York Subclass were not timely or accurately paid the wages and overtime wages they were owed for the work they performed for Defendants including the hours they worked in excess of 40 hours a week and for which they were not compensated.

193.     As a direct and proximate result of Defendants' unlawful conduct, the New York Plaintiffs and the New York Subclass have suffered a loss of income and other damages.

## COUNT EIGHT
### (Failure to Provide Accurate Wage Statements)
### (Brought on Behalf of the New York Subclass)

194.    The New York Plaintiffs incorporate by reference the foregoing allegations of paragraphs 1 through 114 and 126 through 136, as if fully rewritten herein.

195.    New York Labor Law requires every employer to furnish each employee with a statement with every payment of wages, listing, among other things, gross wages deductions; net wages. The number of regular hours worked and number of overtime hours worked.  Section 195(3) of the New York Labor Law.

196.    Defendants failed to provide wage statements that complied with this Statute.

197.    As a result, the New York Plaintiffs are entitled to damages of two hundred fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees.  New York Labor Law Section 198 (1-d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

A.    Conditionally certify this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b) as to the FLSA Collective and direct that Court-approved notice be issued to similarly-situated persons informing them of this action and enabling them to opt in;

B.    Certify this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Plaintiffs and other members of the National Class, and California and New York Subclasses;

C.    Enter judgment against Defendants, jointly and severally, and in favor of Plaintiffs, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b), and the members of the National Class, and California and New York Subclasses;

D.    Award compensatory damages to Plaintiffs, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b), and the members of the National Class, and California and New York Subclasses in the amount of their unpaid regular time

and overtime wages, as well as liquidated damages in an equal amount;

E.      Award Plaintiffs and other members of the FLSA Collective and National Class, and California and New York Subclasses compensatory damages, prejudgment interest, costs and attorneys' fees incurred in prosecuting this action;

F.      Award the California Plaintiffs and the members of the California Subclass the damages and penalties available under California law;

G.      Award the New York Plaintiffs and the members of the New York Subclass the damages and statutory prejudgment interest available under New York Labor laws; and

H.      Award Plaintiffs and other members of the FLSA Collective and National Class, and California and New York Subclasses such further relief as the Court deems equitable and just.

Respectfully submitted,

KLAFTER LESSER LLP
    /s/ Seth R. Lesser
Seth R. Lesser Bar No. SL5560
Christopher M. Timmel Bar No. CT9831
Two International Drive, Suite 350
Rye Brook, NY 10573
Telephone: (914) 934-9200
E-mail: seth@klafterlesser.com
E-mail: christopher.timmel@klafterlesser.com

SCOTT & WINTERS LAW FIRM, LLC
    /s/ Ryan A. Winters
Joseph F. Scott
(*admitted pro hac vice*)
Ryan A. Winters
(*admitted pro hac vice*)
Kevin M. McDermott II
(*admitted pro hac vice*)
The Caxton Building
812 Huron Rd. E., Suite 490
Cleveland, OH 44115
Telephone: 216-912-2221
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com
kmcdermott@ohiowagelawyers.com

PARMET PC

38

　　 */s/ Matthew S. Parmet*
Matthew S. Parmet
(*admitted pro hac vice*)
3 Riverway, Ste. 1910
Houston, TX 77056
Telephone:  713-999-5228
matt@parmet.law

**MORGAN & MORGAN, P.A.**
　　 */s/ Andrew R. Frisch*
Andrew R. Frisch
8151 Peters Road, Ste. 4000
Plantation, FL 33324
Telephone:  954-318-0268
AFrisch@forthepeople.com

*Attorneys for Plaintiffs, Proposed FLSA Collective, and Proposed Fed. R. Civ. P. 23 Class and Subclasses*

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

*s/Seth R. Lesser*
Seth R. Lesser SL-5560