# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

EMANUELE STEVENS, individually and on
behalf of all others similarly situated,

          Plaintiff,

v.

PEPSICO INC., BOTTLING GROUP, LLC,
CB MANUFACTURING COMPANY, INC.,
FL TRANSPORTATIONS, INC., FRITO-
LAY, INC., GOLDEN GRAIN, INC.,
GRAYHAWK LEASING, LLC, JUICE
TRANSPORT, INC., NEW BERN
TRANSPORT CORPORATION, PEPSI
NORTHWEST BEVERAGES, LLC, PEPSI-
COLA SALES & DISTRIBUTION, INC.,
PEPSI-COLA BEVERAGE SALES, LLC,
PEPSICO SALES, INC., QUAKER
MANUFACTURING, LLC, ROLLING
FRITO-LAY SALES, LP, SVC
MANUFACTURING, INC., TROPICANA
MANUFACTURING CO., TROPICANA
PRODUCT SALES, INC., TROPICANA
SERVICES, INC.,

          Defendants.

CASE NO. 7:22-cv-00802-NSR

---

MOISES MADRIZ AND RODNEY
ULLOA, individually and on behalf of all
others similarly situated,

          Plaintiff,

v.

PEPSICO, INC.; NAKED JUICE CO.;
NAKED JUICE CO. OF GLENDORA, INC.;
TROPICANA PRODUCTS, INC.; and
TROPICANA SERVICES, INC.,

          Defendants.

CASE NO. 1:22-cv-04851-NSR

| | | |
|---|---|---|
| RICARDO VIDAUD, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CASE NO. 1:22-cv-04850-NSR |
| PEPSICO INC., | ) ) ) | |
| Defendant. | ) ) | |
| SETH MARSHALL and MATTHEW WHITE, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | CASE NO. 7:22-cv-02370-NSR |
| PEPSICO INC., BOTTLING GROUP, LLC, and CB MANUFACTURING COMPANY, INC., | ) ) ) ) | |
| Defendants. | ) ) | |
| TYRELL KING, individually and on behalf of all others similarly situated, | ) ) | CASE NO. 4:22-cv-00360-KGB |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| PEPSICO INC., | ) ) | |
| Defendant. | ) ) | |
| KENNETHA MITCHELL, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CASE NO. 7:22-cv-04555-NSR |
| PEPSICO INC., | ) ) ) | |
| Defendant. | ) ) | |

| | |
|---|---|
| DONEDWARD WHITE, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>v.<br><br>PEPSICO INC.,<br><br>                Defendant. | CASE NO. 7:22-cv-05198-NSR |
| JAMAL WINGER, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>v.<br><br>THE QUAKER OATS CO.,<br><br>                Defendant. | CASE NO. 1:22-cv-04828-NSR |
| ALLISON POULSON, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>v.<br><br>PEPSICO INC. d/b/a PFS and FRITO-LAY, INC.<br><br>                Defendants. | CASE NO. 7:22-cv-05196-NSR |
| ROBNEY IRVING-MILLENTREE, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>v.<br><br>PEPSICO INC.,<br><br>                Defendant. | CASE NO. 1:22-cv-04784-NSR |

TRACY ELLIS,
individually and on behalf of all others
similarly situated,

        Plaintiff,

v.

PEPSICO INC.,

        Defendant.

CASE NO. 7:22-cv-05200-NSR

THOMAS PARRISH, individually and on
behalf of all others similarly situated,

        Plaintiff,

v.

FRITO-LAY NORTH AMERICA, INC. and
PEPSICO, INC.

        Defendants.

CASE NO. 7:22-cv-04556-NSR

DEVIN DROBSCH, individually and on
behalf of all others similarly situated,

        Plaintiffs,

v.

PEPSICO INC.,

        Defendant.

CASE NO. 7:22-cv-04216-NSR

JOSHUA SMITH, individually and on behalf
of all others similarly situated,

        Plaintiff,

v.

PEPSICO INC.,

        Defendant.

CASE NO. 7:22-cv-04238-NSR

| | |
|---|---|
| JACOB TSCHUDY, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO. 7:22-cv-04212-NSR ) |
| PEPSICO INC., | ) ) |
| Defendant. | ) ) ) |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**
**(Permission to File 40 Page Memorandum Granted by ECF Doc. No. 53)**

**KLAFTER LESSER LLP**
Seth R. Lesser Bar No. SL5560
Christopher M. Timmel Bar No. CT9831
Two International Drive, Suite 350
Rye Brook, NY 10573
Telephone: (914) 934-9200

**PARMET PC**
Matthew S. Parmet
(admitted pro hac vice)
3 Riverway, Ste. 1910
Houston, TX 77056
Telephone:  713-999-5228

**SCOTT & WINTERS LAW FIRM, LLC**
Joseph F. Scott
(admitted pro hac vice)
Ryan A. Winters
(admitted pro hac vice)
Kevin M. McDermott II
(admitted pro hac vice)
The Caxton Building
812 Huron Rd. E., Suite 490
Cleveland, OH 44115
Telephone: 216-912-2221

**MORGAN & MORGAN, P.A.**
Andrew R. Frisch
8151 Peters Road, Ste. 4000
Plantation, FL 33324
Telephone:  954-318-0268

*Attorneys for Plaintiffs, Proposed FLSA Settlement Collective, and Proposed Fed. R. Civ. P. 23 Settlement Class and Subclasses*

**TABLE OF CONTENTS**

I.     BACKROUND FACTS.............................................................................. 3

II.    THE SETTLEMENT AGREEMENT ......................................................... 5

    A.    Benefits of the Proposed Settlement…………………………………….6

    B.    The Notice Process……………………………………………………….9

    C.    Request for Exclusion and Objections……………………………………...10

    D.    The Allocation of the Settlement Payment………………………………….11

    E.    Payments to Collective/Class Members…………………………………….14

    F.    Attorney's Fees and Costs and Service Payments to Named Plaintiffs………….15

    G.    Releases……………………………………………………………………15

III.    The Proposed Settlement is Fair and Reasonable……………………………………...16

    A.    The *Grinnell* Factors are Satisfied……………………………………………19

        1.    Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1)…………………………………………………….20

        2.    The Count Cannot Access Reaction of the Class until After Notice Issues (*Grinnell* Factor 2)…………………………………………….21

        3.    The Parties are Well-Informed to Resolve the Case Responsibly (*Grinnell* Factor 3)……………………………………………………..21

        4.    Plaintiffs Would Face Real Risks of Establishing Liability and Damages If the Case Proceeded (*Grinnell* Factors 4 and 5)…………………………..22

        5.    Establishing and Maintaining the Class Through Trial Presents Risk (*Grinnell* Factor 6)…………………………………………………….23

        6.    Defendants' Ability to Withstand a Greater Judgment is Not Determinative (*Grinnell* Factor 7)………………………………………23

        7.    The Settlement is Substantial, Even in Light of the Best Possible Recovery and Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)...24

i

B.      The Settlement Resolves Contested Litigation over a Bone Fide Dispute…………………………………………………………………...25

IV.     The FLSA Collective, Class, and Subclasses Should be Certified for Settlement Purposes………………………………………………………………26

        A.      The Rule 23(a) Factors Are Met……………………………………27

                1.      Numerosity……………………………………………………27

                2.      Commonality and Typicality…………………………………27

                3.      Adequacy……………………………………………………...29

        B.      The Rule 23(b)(3) Factors Are Met…………………………………30

V.      The Proposed Notice Will Provide Adequate Notice to The Members of the National Class and FLSA Collective and the Members of the Subclasses...................................... 32

VI.     This Court May Enjoin the Related State Court Actions………………………...33

VII.    A Final Approval Hearing Should be Scheduled………………………………...37

VIII.   Conclusion ..................................................................................................... 37

# TABLE OF AUTHORITIES

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................................ 17, 30, 31

*Baffa v. Donaldson*,
    222 F.3d 52 (2d Cir. 2000) .................................................................................... 29

*Ballinger v. Advance Magazine Publrs., Inc.*,
    2014 U.S. Dist. LEXIS 179538 (S.D.N.Y. Dec. 29, 2014) ................................... 22

*Battle v. Liberty Nat'l Life Ins. Co.*,
    877 F.2d 877 (11th Cir. 1989) ............................................................................... 35

*Beckman v. KeyBank, N.A.*,
    293 F.R.D. 467 (S.D.N.Y. 2013) ........................................................................... 18

*Brown v. Mustang Sally's Spirits & Grill, Inc.*,
    2013 U.S. Dist. LEXIS 13482 (W.D.N.Y. Jan. 31, 2013) ............................... 19, 25

*Caridad v. Metro-N. Commuter R.R.*,
    191 F. 3d 283 (2d Cir. 1999) ................................................................................. 28

*Carlough v. Amchem Prods., Inc.*,
    10 F.3d 189 (3d Cir. 1993) .................................................................................... 35

*Central States Southeast v. Merck-Medco*,
    504 F.3d 229, (2d Cir. 2007) ................................................................................. 27

*Chowdhury v. Hamza Express Food Corp.*,
    666 Fed. Appx. 59 (2d Cir. 2016) .......................................................................... 24

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ............................................................................. 18, 19

*Clem v. KeyBank, N.A.*,
    2014 U.S. Dist. LEXIS 87174 (S.D.N.Y. June 20, 2014) ..................................... 18

*Crum v. Maricopa County*,
    190 Ariz. 512 (1997) ............................................................................................. 24

*Cruz v. Lyn-Rog Inc.*,
    2010 WL 4923927 (E.D.N.Y. 2010) ..................................................................... 26

*Dorn v. Eddington Sec., Inc.*,
    2011 U.S. Dist. LEXIS 11931 (S.D.N.Y. Jan. 20, 2011) ..................................... 27

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) .................................................................................... 20

*Eisen v. Carlisle & Jacquelin*,
   391 F.2d 555 (2d Cir. 1968) ........................................................................ 28

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005) ............................................................... 31

*Gayle v. Harry's Nurses Registry, Inc.*,
   594 Fed. Appx. 714 (2nd Cir. 2014) ........................................................... 8

*Gilliam v. Addicts Rehab. Ctr. Fund*,
   2008 U.S. Dist. LEXIS 23016 (S.D.N.Y. Mar. 24, 2008) ................... 20, 21, 22

*Goldstein v. North Jersey Trust Co.*,
   39 F.R.D. 363 (S.D.N.Y. 1966) .................................................................. 27

*Granada Invest., Inc. v. DWG Corp.*,
   962 F.2d 1203 (6th Cir. 1992) .................................................................... 23

*Green v. Wolf Corp.*,
   406 F.2d 291 (2d Cir. 1968) ...................................................................... 31

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .................................................................... 35

*Hernandez v. Anjost Corp.*,
   2013 U.S. Dist. LEXIS 116048 (S.D.N.Y. Aug. 14, 2013) ......................... 18

*Imbarrato v. Banta Mgmt. Servs., Inc.*,
   2022 U.S. Dist. LEXIS 75179 (S.D.N.Y. Apr. 25, 2022) ........................... 33

*In re Agent Orange Prod. Liab. Litig.*,
   818 F.2d 145 (2d Cir. 1987) ..................................................................... 27,28

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) ..................................................... 20, 22

*In re Baldwin-United Corp.*
   770 F.2d 328 (2d Cir. 1985) ...................................................................... 36

*In re Diet Drugs Prods. Liab. Litig.*,
   282 F.3d 220 (3d Cir. 2002) ...................................................................... 35

*In re Flag Telecom Holdings, Ltd. Securities Litigation*,
   574 F.3d 29 (2d Cir. 2009) ........................................................................ 29

*In re Ira Haupt & Co.*,
   304 F. Supp. 917 (S.D.N.Y. 1969) ............................................................. 22

*In re NYSE Specialists Securities Litigation*,
   260 F.R.D. 55 (S.D.N.Y. 2009) .................................................................. 30

iv

*In re Paine Webber Ltd. P'Ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ........................................................ 22

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ............................................................ 22

*Lizondro-Garcia v. Kefi LLC*,
  300 F.R.D. 169 (S.D.N.Y. 2014) ...................................................... 19

*Reyes v. Altamarea Grp., LLC,* No. 10-6451,
  2010 WL 5508296 (S.D.N.Y. Dec. 22, 2010) .................................. 32

*Riedel v. Acqua Ancien Bath N.Y., LLC*,
  2016 U.S. Dist. LEXIS 68747 (S.D.N.Y. May 19, 2016) .................... 19

*Strougo v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003) .............................................. 23

*Varacallo v. Mass. Mut. Life Ins. Co.*,
  226 F.R.D. 207 (D.N.J. 2005) ......................................................... 33

*Viafara v. MCIZ Corp.*,
  2014 U.S. Dist. LEXIS 60695 (S.D.N.Y. Apr. 30, 2014) .................... 18

*Wal-Mart Stores, Inc. v. Dukes*
  564 U.S. 33 (2011) ......................................................................... 35

*Wal-Mart Stores, Inc., v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ........................................................ 17, 18

*Wolinsky v. Scholastic Inc.*,
  900 F. Supp. 2d 332 (S.D.N.Y. 2012) ......................................... 18, 19

*Zivkovic v. Laura Christy L.L.C.,* No. 17-553 (GHW),
  2018 U.S. Dist. LEXIS 204113 (S.D.N.Y. Nov. 30, 2018) ................. 29

## Codes, Statutes, and Other Regulations

Fed. R. Civ. P. 23……………………………………………………………………*passim*

28 U.S.C. § 216 .................................................................................. 26

28 U.S.C. § 1651 ................................................................................ 34

28 U.S.C. § 1715 ............................................................................. 9, 36

Cal. Labor Law § 210 ....................................................................... 8, 13

NY Labor Law, § 198 ........................................................................... 8

Emanuele Stevens, Moises Madriz, Rodney Ulloa, Ricardo Vidaud, Jorge Mendoza, Seth Marshall, Matthew White, Tyrell King, Kennetha Mitchell, Donedward White, Jamal Winger, Allison Poulson, Robney Irving-Millentree, Tracy Ellis, Thomas Parrish, Devin Drobsch, Joshua Smith, and Jacob Tschudy (together "Plaintiffs") hereby submit this memorandum in support of their motion for preliminary approval of the proposed collective and class settlement reached between Plaintiffs, on behalf all persons who were employed in the United States as employees by PepsiCo, Inc. ("PepsiCo"), New Tiger LLC ("New Tiger"), and their various respective Divisions and subsidiaries, which includes, Bottling Group, LLC, Cb Manufacturing Company, Inc., FL Transportations, Inc., Frito-Lay, Inc., Golden Grain, Inc., Grayhawk Leasing, LLC, Juice Transport, Inc., New Bern Transport Corporation, Pepsi Northwest Beverages, LLC, Pepsi-Cola Sales & Distribution, Inc., Pepsi-Cola Beverage Sales, Llc, Pepsico Sales, Inc., Quaker Manufacturing, LLC, Rolling Frito-Lay Sales, LP, Svc Manufacturing, Inc., Tropicana Manufacturing Co., Tropicana Product Sales, Inc., and Tropicana Services, Inc. (collectively, "Defendants"), and who were not timely or fully paid by Defendants for all hours worked during the seventeen pay periods between December 5, 2021 and April 8, 2022  due to Defendants' payroll provider, the Ultimate Kronos Group ("Kronos") experiencing a cybersecurity incident on or about December 5, 2021 (the "National Class").  Plaintiffs and Defendants are collectively referred to herein as the "Parties."[1]  The total number of individuals who are in the National Class is 69,809.  The members of the National Class are all potential members of a Collective pursuant to Section 16(b) of Federal Labor Standards Act ("FLSA Collective").  The National Class and FLSA Collective are jointly referred to herein as the "Collective/Class."

---

[1] In addition to the named Plaintiffs, over 150 other employees of Defendants have filed FLSA consents to join the *Stevens* action or one of the actions that have been or are in the process of being transferred to this Court for purposes of the settlement that is the subject of this motion for preliminary approval.

1

Given the paramount interests of Plaintiffs and the members of the Collective/Class to receive all compensation they were due, the Parties determined to resolve this litigation as expeditiously as was possible.  Utilizing the assistance of an experienced mediator, the Parties, after two days of mediation, finally agreed to a settlement in principle that is now set forth in the Settlement Agreement.  This litigation has already led to the payment by Defendants on May 6, 2022, of the amounts they have determined Plaintiffs and the Collective/Class members were underpaid (the "May 6 Payment").  The proposed settlement described in the Settlement Agreement will, if approved by this Court, provide additional significant benefits to the members of the Collective/Class, including (1) $12.75 million in liquidated damages and penalties over and above the regular and overtime pay they were due and paid on May 6; (2) Defendants' agreement not to seek to recoup approximately $60 million in overpayments Defendants paid to the members of the Collective/Class; (3) assistance by Plaintiffs' counsel in resolving any disputes between a Collective/Class member and their Defendant employer over their May 6 Payment; and (4) Defendants' payment of all Settlement Notice and Administration costs.

Plaintiffs submit that the proposed settlement warrants preliminary approval by the Court. As more fully discussed below, the benefits of the proposed settlement were achieved through arms-length negotiations facilitated by an experienced mediator, Mr. Martin Scheinman. Additionally, the $12.75 million recovery for liquidated damages and penalties represents a fair compromise of Plaintiffs' claims as Defendants had significant defenses to being assessed any liquidated damages or penalties – particularly, that Defendants themselves were victims of the cyberattack that shut down Kronos' operations and therefore did not knowingly or willfully violate any laws and hence should not owe any liquidated damages or penalties.  In fact, rather than attempting to avoid paying employees overtime, Defendants could argue to a judge or jury

2

that, when the Kronos problem arose, it *overpaid* their employees by *approximately $60 million*. Plaintiffs could therefore have litigated these issues for years, including through discovery and trial and appeal, only to recover no liquidated damages or penalties.  The proposed settlement avoids this significant risk and provides significant benefits to the Collective/Class members.

The Settlement therefore has sufficient indicia of being fair, reasonable, and adequate such that the Court can determine whether the proposed settlement should be given final approval after notice is sent to the Collective/Class members informing them of the settlement and giving them a fair opportunity to be heard or opt-out.

## I.     BACKROUND FACTS

This litigation arises from an outage in "Kronos," a timekeeping system utilized by Defendants to track the daily hours and calculate the pay of its hourly-paid employees and also to track overtime hours of all employees entitled to overtime.  Consolidated Amended Complaint, filed June 15, 2022 (Dkt. No. 55 ("CAC"), ¶¶ 2-3, 79; Declaration of Seth R. Lesser (filed concurrently herewith) ("Lesser Dec.") at ¶ 3.  As a result of the cyber-attack experienced by Kronos on December 11, 2021, Defendants were unable access any payroll data stored or entered into the system for the pay period beginning December 5 and ending December 11, 2021.  Lesser Dec. at ¶ 4.  The impact of the Kronos Outage lasted for sixteen additional weekly pay periods, with the last pay period ending on April 9, 2022.  Lesser Dec. at ¶ 5.

Because of the Kronos Outage, Defendants resorted to imperfect methods of compensating their employees such as the use of averages of prior payments, other estimation techniques and other measures for tracking employee hours.  CAC at ¶¶ 79, 87; Lesser Dec. at ¶ 6.  These measures provided no confidence to employees they would receive the compensation to which they were entitled, which led to the filing of the *Stevens* action on January 31, 2022,

and, thereafter, the following fourteen related collective and/or class actions by impacted

employees which compromise the cases on whose behalf Plaintiffs negotiated the Settlement:

1.  *Dobsch v. PepsiCo, Inc.,* No. 2:22-cv-00550-WSS (W.D. Pa.)
2.  *Ellis v. PepsiCo,. Inc.*, No. 2:22-cv-01895-JMV-LDW (D.N.J.)
3.  *Irving-Millentree v. PepsiCo, Inc.*, No 4-22-cv-00284-ALM (E.D. Mo.)
4.  *King v. PepsiCo, Inc.*, No. 4:22-cv-00360-KGB (E.D. Ark)
5.  *Madriz et al. v. PepsiCo, Inc., at al.*, No. 5:22-cv-00549-JGB-KK (C.D. Cal).
6.  *Marshall v. PepsiCo, Inc., et al.*, No. 7:22-cv-02370-PMH (S.D.N.Y.)
7.  *Mitchell v. PepsiCo., Inc.,* No 3:22-cv-00421-TJC-JBT (M.D. Fla.)
8.  *Parrish v. Frito-Lay North America, Inc.*, No. 4:22-cv-00284-ALM (E.D. Tex.)
9.  *Poulson v. PepsiCo, Inc., et al.*, No. 1:22-cv-00725-RLY-DML (S.D. Ind.)
10. *Smith v. PepsiCo., Inc.*, No. 3-22-cv-00184-HEH (E.D. Va.)
11. *Tschudy v. PepsiCo., Inc.*, 3:22-cv-00210-WMC (W.D. Wis.)
12. *Vidaud v. PepsiCo, Inc.*, No. 2:22-cv-02713-ODW-KS (C.D. Cal.)
13. *White v. PepsiCo, Inc.,* No. 1:22-cv-02066 (N.D. Ill.)
14. *Winger v. The Quaker Oats Co.*, No. 1:22-cv-02023 (N.D. Ill.)

Lesser Dec., ¶ 7.  These actions are collectively referred to as the "Class/Collective Actions."[2]

The proposed Settlement would resolve all of these Collective/Class Actions.  Each, like the

*Stevens* Action, involve claims that were brought either under the FLSA or under the laws of

those states that have state wage and hour statutes analogous to the FLSA, and all arise from the

same nexus of facts – namely, Defendants' inability to properly, fully, and timely pay its hourly

employees during and due to the Kronos Outage.  *Id.* at ¶ 8.  In effect, the proposed Settlement is

an omnibus settlement that would, if approved, put an early end to related and potentially dogged

litigation in numerous courts nationwide.  *Id.* at ¶ 9.

While the Kronos payroll system was restored on January 17, 2022, Defendants had to

conduct significant tests to validate and confirm the stability of the payroll system before

operations could resume.  Lesser Dec. at ¶ 10.  The system was restored in certain divisions for

the payroll run on February 26, 2022, but for other divisions not until the payroll run on April 9,

---

[2]  These cases have been transferred to this Court and have been consolidated for the proposed settlement.

2022, but Plaintiffs and the members of the Collective/Class still had not received accurate pay for the pay periods impacted by the Kronos Outage. *Id.* at ¶ 11. To address this issue, PepsiCo retained Ernst & Young to conduct a payroll reconciliation process. *Id.* at ¶ 12. This reconciliation process was aided by time recorded into the Kronos system during the Kronos Outage but which was not accessible until Kronos was again fully functional.[3] *Id.* at ¶ 13. As a result of this process, Defendants determined that they had underpaid 23,801employees by $23,896,550.00 in the aggregate (the "Reconciliation Amount"). *Id.* at ¶ 15. In addition, Defendants determined that 41,481 employees had been overpaid by $59,776,602 in the aggregate. *Id*.

The Class/Collective Actions not only asserted federal and state claims for unpaid wages and overtime, but also claims for liquidated damages under the FLSA and penalties for inaccurate wage statements and untimely wage payments under the laws of every state in which Defendants employed members of the Collective/Class.

On April 22, 2022, and then again on May 3, 2022, the Parties held full-day mediation sessions before Mr. Martin Scheinman, Esq., a highly regarded labor law neutral, particularly in the wage and hour arena. Lesser Dec. at ¶ 16. On May 3, 2022, the Parties executed a Term Sheet containing the terms agreed to as a result of the mediation. *Id.* at ¶ 17. The following day, Defendants distributed the Reconciliation Amount among the 23,801 underpaid members of the Collective/Class. *Id.* at ¶ 18.

## II.    THE SETTLEMENT AGREEMENT

The Settlement will provide a fair, reasonable and adequate recovery to individuals employed by Defendants in the United States who were impacted by the Kronos Outage during

---

[3] Plaintiffs, however, received somehow inconsistent directions as to whether they should continue to enter their time in the Kronos system during the Kronos Outage. Lesser Dec. at ¶ 14.

the seventeen weekly pay periods between December 5, 2021, and April 9, 2022 (the "Class Period"). Lesser Dec. at ¶ 19.

    A.   <u>Benefits of the Proposed Settlement</u>

The Settlement Agreement provides substantial compensation for the members of an opt-in FLSA Collective, Rule 23 National Opt-Out Class and additional compensation for the members of a Rule 23 New York Subclass and Rule 23 California Subclass, as defined as follows:

<u>FLSA Collective and National Class</u>

> All current and former employees of Defendants in the United States during the seventeen weekly pay periods between December 5, 2021 and April 9, 2022, who were impacted by the Kronos Outage.

<u>The Federal Rule 23 California State Law Subclass:</u>

> All current and former employees of Defendants in California during the seventeen weekly pay periods between December 5, 2021 and April 8, 2022, who were impacted by the Kronos Outage.

<u>The Federal Rule 23 New York State Law Subclass:</u>

> All current and former employees of Defendants in New York during the seventeen weekly pay periods between December 5, 2021 and April 8, 2022, who were impacted by the Kronos Outage.

An "impacted employee" is an employee who received an inaccurate pay stub or inaccurate compensation at any time during the Class Period, regardless of whether that employee's compensation paid during the Kronos Outage as compared to compensation owed for the Kronos Outage time period resulted in a net positive (overpayment), net neutral, or net negative (underpayment) to that employee. The Parties have agreed, for settlement purposes only and for purposes of preliminary approval of the settlement, to the conditional certification by the Court

of the FLSA Collective and preliminary certification of the National Class and New York and California Subclasses.[4]

On May 6, 2022, following the agreement-in-principle to settle this litigation and in order to provide payment most expeditiously to the impacted employees, Defendants made payments of $23,896,550, representing the unpaid compensation owed to the members of the Collective/Settlement Class. This amount was determined pursuant to analysis undertaken by Defendants in conjunction with third-party auditor Ernst & Young (and shared with Plaintiffs' Counsel). *See* Settlement Agreement, §5(a).[5]

In addition to the May 6 Payment, Defendants have agreed, within fourteen (14) days after the entry of a Final Approval Order, to cause their respective portions of the total $12,750,000.00 (the "Settlement Payment") to be wired into an interest-bearing escrow account designated by Plaintiffs' counsel and be under the control of the Settlement Administrator. *Id.*, §5(b).  The Settlement Payment represents a negotiated amount for:  the liquidated damages (100% of actual damages) available under the FLSA (*id.*), unless a defendant can show their actions were taken in good faith and that they had reasonable grounds for their belief that they

---

[4] As discussed below in Section IV, the FLSA Collective, State Law Class and the Subclasses meet all of the requirements for conditional and preliminary certification for purposes of preliminary approval of this settlement.

[5] As noted below, the extent of the payment was the subject of information provided by Defendants to Plaintiffs' counsel before and during the time of the two mediations and has further been subject to confirmatory discovery by Plaintiffs' counsel since then.

were complying with the FLSA;[6] and the penalties available for untimely payment of wages and

for inaccurate wage statements under State laws.[7]

The proposed Settlement also provides additional benefits to the Collective/Class.  First,

although Defendants did, in fact, wish to do so and the issue was negotiated through the

mediator, Defendants have agreed not to recoup from Collective/Class members *any* of the

approximately $60 million in overpayments they made to members of the Collective/Class

during the Kronos Outage.  Settlement Agreement, §5(a).  Second, Collective/Class members

will have up to 90 days from the Court's final approval of the Settlement in which to present any

challenge to the Reconciliation Amount they received on May 6, and they will have the

opportunity to consult with Plaintiffs' Counsel should they have questions or concerns about the

amount of their payment, or, specifically, wish to challenge it.  Additionally, should a Defendant

and any National Class member fail to agree upon an amount of their Reconciliation Amount, the

Parties have agreed to have such disputes be resolved by a neutral party acceptable to both

Plaintiffs and the applicable Defendant.  Settlement Agreement, § 6(b).  Third, and in distinction

to most class or collective action settlements of any size, Defendants have agreed to pay the

significant costs of providing notice to and settlement proceeds to the members of the

---

[6] *See Gayle v. Harry's Nurses Registry, Inc.,* 594 Fed. Appx. 714, 718 (2nd Cir. 2014)
("FLSA's liquidated damages provision, [] presumptively awards 'an additional equal amount as
liquidated damages,' 29 U.S.C. § 216(b), but provides for an affirmative defense in the event that a liable
defendant had a  reasonable, good-faith belief of compliance.") (citing *Brock v. Bialosky*, 833 F.2d 11, 19
(2d Cir. 1987) ("Double damages are the norm, single damages the exception.").

[7] *See e.g.* NY Labor Law, § 198 (1-d) ("If any employee is not provided a statement or statements as
required by subdivision three of section one hundred ninety-five of this article, he or she shall recover in a
civil action damages of two hundred fifty dollars for each work day that the violations occurred or
continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable
attorney's fees."); Cal. Labor Law § 210(a)(1) ( "For any initial violation, one hundred dollars ($100) for
each failure to pay each employee." and  "For each subsequent violation, or any willful or intentional
violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the
amount unlawfully withheld.").

Collective/Class.  *Id.* § 10(b).  As a result, such costs will not reduce the amount of any payments to Collective/Class members.

Finally, as a prerequisite to the settlement, Plaintiffs insisted upon – and the Parties agreed to – Plaintiffs conducting confirmatory discovery as to, among other things, (1) Defendants' use of Kronos and consideration of back-up systems; (2) what was done by Defendants when the Kronos Outage occurred; (3) the manner Kronos was used by all the Defendants and whether the response to the Kronos Outage differed between Defendants; (4) how Defendants paid employees during the Kronos Outage period and how that was determined, including any overpayments; (5) which pay periods were impacted by the Kronos Outage; and (6) to the extent not extent not already covered by (4), how Ernst & Young did its analysis. *See* Settlement Agreement, §7(a); Lesser Dec. at ¶ 20.  Plaintiffs' counsel have not only completed that confirmatory discovery process but also, separately, undertook to consult with their clients as to the accuracy of the data with respect to those clients.  Lesser Dec. at ¶ 21.

Plaintiffs are satisfied that the proposed Settlement is in the best interests of the Collective/Class members.  Lesser Dec. at ¶ 22.

B.   The Notice Process

The Parties have mutually agreed that Angeion Group will serve as Settlement Administrator and perform the following services, including without limitation, dissemination of the Court approved notice of this proposed settlement to the members of the Collective/ Class and to an "Appropriate Federal Official" and "Appropriate State Officials" (collectively, "Government Officials") as required by 28 U.S.C. § 1715; processing of requests for exclusion, calculation of payments due, distribution of checks payable to all members of the Collective/Class unless they have submitted a timely request for exclusion; periodic reporting of

checks that have been cashed to Plaintiffs' Counsel; tax reporting on IRS Form 1099 for each cashed check; and conducting a second distribution of funds remaining due to uncashed checks if economically feasible, as well as other activities attendant upon effectuating the Settlement. *See* Settlement Agreement, §§10(a), 11(a).

Specifically, within ten (10) days following Preliminary Approval, Defendants shall provide the Settlement Administrator with a list, in electronic form, of all members of the Collective/Class and each of their last known address and email address (if known) (the "Class/Collective List"). *See* Settlement Agreement, §12(a).  Within twenty-one (21) days after the Court grants Preliminary Approval, the Parties shall instruct the Settlement Administrator to mail and email (if the email address is known) the Notice of Settlement (in substantially the form attached as Exhibit D to the Settlement Agreement) to the persons identified on the Class/Collective List (the "Notice").  *Id.*, §12(b).  For any returned mail Notices, the Settlement Administrator will conduct reasonable address verification efforts consistent with the customary practices in the settlement administration industry. *Id.*

C.   Request for Exclusion and Objections

Any member of the National Class wishing to be excluded from the Settlement may submit an "Opt-Out Request" to the Settlement Administrator, postmarked by forty-five (45) days after the mailing of the Notice (the "Response Deadline").  *See* Settlement Agreement, §13(a).  Any National Class Member who requests exclusion from the Settlement will not be entitled to receive a Settlement Payment and will not be bound by the Settlement Agreement or any releases that become effective in this Action and will not have any right to object to or appeal any order related to the Settlement. *Id.*

Any member of the National Class who does not affirmatively opt-out of the Settlement by submitting a timely and valid Opt-Out request will be bound by the Settlement's terms, including those pertaining to the applicable Release, as well as by any Judgment that may be entered by the Court if it grants final approval of the Settlement. *See* Settlement Agreement, §13(c).  Any member of the National Class wishing to object to the Settlement, or any part thereof, shall submit an objection postmarked by the Response Deadline to the Plaintiffs' Counsel and Defendants' Counsel identified in Section 22 of the Settlement Agreement and to the Clerk of the Court.  *Id.* at §13(d).

        D.   <u>The Allocation of the Settlement Payment</u>

The allocation of the benefits of the cash portion of the Settlement is set forth in Exhibit E to the Settlement Agreement.  This chart shows the allocation of the gross amount of cash settlement benefits before deductions for the amounts of an award by the Court for attorneys' fees, expenses, and service payments to Plaintiffs, which will result in the same percentage deduction to each group. In determining the allocation, Plaintiffs' counsel considered the relative strength of the claims for liquidated damages available under federal and state laws, as compared to the claims for additional penalties available under New York and California law, as discussed herein.  The amount available for distribution after deduction of these amounts is referred to as the "Net Settlement Fund."  The allocation groups are as follows:

1. Allocation of Liquidated Damages to Collective/Class Members who were net underpaid by at least $1 (65.3 % of the Net Settlement Fund);

2. Allocation of Liquidated Damages to Collective/National Class Members who were net overpaid, net neutral or who were net underpaid by less than $1 (9 % of the Net Settlement Fund);

3.   Allocation of Penalties to New York and California Subclass Members (25.7 % of the

Net Settlement Fund):

GROUP 1 – The Group (1) allocation represents a compromised amount for liquidated

damages (double damages) that may be recovered under the FLSA.  *See* Section IV(A)(1).

The Collective/Class members in Group (1) are those members who were not paid the full

amount of compensation they were due (and such amount exceeds $1) taking into account

any overpayment to them during the Class Period.  Each such individual Collective/Class

member will receive a check representing their pro-rata share of the amount allocated to

Group (1), which share shall be determined by dividing the amount of their net

underpayment by $23,896,550.00, which is the amount of all net underpayments, and

multiplying that fraction by the net amount allocated to Group (1).  The chart in Exhibit E to

the Settlement Agreement shows the average benefit to Group (1) based on the gross amount

of $8,330,350 allocated to Group (1).

GROUP 2 - The Collective/Class members in Group (2) are those members who did not have

an overall underpayment of at least $1 due to the amount of overpayments to them during

certain pay periods.  For this reason, these employees are allocated a modest benefit of $25

per person, representing a compromised amount for applicable state law penalties for

inaccurate wage statements and for Defendants' inaccurate record keeping.  *See* Section

IV(A)(1).  Each individual National Class member in Group (2) will receive a check

representing the amount allocated to Group (2). The chart in Exhibit E to the Settlement

Agreement shows the benefit to each member of Group (2) based on the gross amount of

$1,150,200 allocated to Group (2).

GROUP 3 - The Group (3) allocation represents a compromised amount for penalties

available under New York and California law for underpayments during any pay period, for

inaccurate wage statements and for inaccurate record keeping on the part of Defendants.  *See*

Section IV(A)(1).  The Collective/Class members in Group (3) worked for a Defendant in

either New York or California and are subdivided into two groups:  the members of one

group each had at least one pay period in which they had an underpayment and the members

of the second group received no underpayments but received inaccurate (overstated) wage

statements.[8]  Each individual State Law Subclass member in Group (3) will receive payment

as a member of FLSA Collective/National Class Group (1) or Group (2) as applicable, in

addition to their applicable share of the amount allocated to Group (3).  The applicable share

of the individual State Law Subclass members in Group (3) shall be determined as follows:

---

[8] The additional compensation for New York and California employees is based, *inter alia,* on compromised amounts due to the following: NYLL Section 198 (1-d) ("If any employee is not provided a statement or statements as required by subdivision three of section one hundred ninety-five of this article, he or she shall recover in a civil action… together with costs and reasonable attorney's fees."); NYLL Section 195(4) (the same penalty provision applies to the requirement that employers maintain accurate time records); Cal. Labor Law Section 210(a)(1) (for a failure to pay wages earned in any employment twice during each calendar month on days designated in advance by the employer as the regular paydays as required by Cal. Labor Law Section 204, "for any initial violation, one hundred dollars ($100) for each failure to pay each employee"); Cal. Labor Code Section 226(e)(1) ("An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a), which requires accurate wage statements, is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney s fees."); Cal. Labor Code Section 1174.5.  ("Any person employing labor who willfully fails to maintain the records required by subdivision (c) of Section 1174 or accurate and complete records required by subdivision (d) of Section 1174, or to allow any member of the commission or employees of the division to inspect records pursuant to subdivision (b) of Section 1174, shall be subject to a civil penalty of five hundred dollars ($500).").

These provisions provide only nominal damages, if any, for those who were not underpaid.  *See* NYLL Section 198 (1-d) ("it shall be an affirmative defense that (i) the employer made complete and timely payment of all wages due pursuant to this article or articles nineteen or nineteen-A of this chapter to the employee who was not provided statements as required by subdivision three of section one hundred ninety-five of this article"); Cal. Labor Code 210(a)(1) (provisions are based on a failure to pay).  It is also doubtful California inaccurate wage statement or record keeping penalties would apply to employees who received all or more than they were entitled to.

(i) Group (3) members who were underpaid at least once during the Kronos Outage will receive a pro-rata share determined by dividing the number of underpaid pay periods experienced by the employee by the number of unpaid pay periods by all members of group (3) who were underpaid at least once during the Kronos Outage; (ii) for all remaining members of Group (3), as they did not suffer any underpayment of wages but did suffer the inconvenience of inaccurate wage statements, they will receive payment of $25.00.

   E. <u>Payments to Collective/Class Members</u>

  The Settlement Agreement also provides that upon final approval and within thirty (30) days following the Effective Date, the Settlement Administrator will begin the distribution by mailing checks to each Collective/Class Member who has not submitted a timely and valid request for exclusion ("Eligible Claimant"). *See* Settlement Agreement, 15(a).  The checks mailed to Collective/Class members will contain, in plain English, a clear statement that if the member cashes their check, they will be releasing the Released Claims described *infra at* III.G;. Settlement Agreement, §16(a) (release of FLSA claims).  Checks issued by the Settlement Administrator shall expire ninety (90) days after they are issued, but a failure by any Eligible Claimant to deposit or cash a check within the time period allotted shall have no effect on that individual's release of Released Claims pursuant to Section 16(b) of the Settlement Agreement, which pertains to a release of State Law claims. Settlement Agreement, §15(c). The Settlement Administrator will mail a reminder postcard to all Eligible Claimants who have not cashed their check within thirty (30) days of mailing the check. *Id.*

  The Parties have further agreed that the amount paid to Eligible Claimants who cash their checks shall be reported on a Form 1099 for tax purposes.  *Id.*  Any funds remaining due to uncashed checks shall be redistributed to the Settlement Class on a *pro rata* basis if

economically practicable. *Id.*, §15(f).  If not economically practicable, any funds not disbursed as a result of an uncashed check shall be tendered by the Settlement Administrator as *cy pres* to the National Employment Law Project.   *Id.*  The Parties represent that they do not have a significant prior affiliation with the recipient that could create a conflict of interest.

F.   Attorneys' Fees and Costs and Service Payments to Named Plaintiffs

The Settlement Agreement provides that Plaintiffs' Counsel may petition the Court for an award of attorneys' fees and costs in conjunction with the Parties' settlement in an amount not to exceed 20 percent of the Settlement Amount plus the amount of the May 6 Payment.  *See* Settlement Agreement, §8(b).  Any attorneys' fees and costs awarded in conjunction with the Parties' settlement shall be paid from the Settlement Amount and shall reduce the Settlement funds available to pay the members of the Collective/Class. *Id.*  Defendants have agreed not to oppose any request by Plaintiffs' Counsel for an award of attorney fees and costs provided it does not exceed twenty percent (20%) of the Settlement Amount plus the May 6 Payment.  In all likelihood, Plaintiffs' counsel will seek less than 20% of this amount.

Plaintiffs' counsel may also petition for an award of service payments to plaintiff Stevens and the named plaintiffs in each of the Class/Collective Actions. *See* Settlement Agreement, §9(a). Defendants have agreed not to oppose request for service awards provided they do not exceed $5,000 to each. *Id.*, §9(b).

Plaintiffs' counsel are making no request for attorneys' fees, expenses, or service payments at this time.  They will make their requests concurrently with moving for final approval of the Settlement should this Court enter the Preliminary Approval Order.

G.   Releases

Upon the Effective Date, all individuals who cash the checks sent to them by the

Settlement Administrator ("Releasing FLSA Claim Collective Members") shall be deemed to release Defendants (collectively referred to as the "Released Parties"), from any and all claims under the FLSA relating to or arising out of the Kronos Outage, including, without limitations, all FLSA claims for unpaid wages (whether minimum wage or overtime), failure to timely pay wages, failure to record hours worked, paystub requirements, reimbursement, and all related claims for statutory damages or penalties, interest, liquidated damages, attorneys' fees, costs, expenses, and all other such amounts. *See* Settlement Agreement, §16(a). This release will be conspicuously included on the checks issued by the Settlement Administrator. *Id.*

Upon the Effective Date, Plaintiffs and all members of the National Class who do not submit a timely and valid request for exclusion from this Action ("Releasing State Law Claim Class Members") shall be deemed to release the Released Parties from any and all claims under state laws relating to or arising out of the Kronos Outage, including, without limitations, all state and local claims for unpaid wages (whether minimum wage or overtime), failure to timely pay wages, failure to record hours worked, paystub requirements, reimbursement, and all related claims for statutory damages or penalties, interest, liquidated damages, attorneys' fees, costs, expenses, and all other such amounts. *See* Settlement Agreement, §16(b).

### III.    The Proposed Settlement is Fair and Reasonable

Rule 23(e) of the Federal Rules of Civil Procedure provides the mechanism for settling a class action, including, as here, through a class certified for settlement purposes:

> The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> > (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

(4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Fed. R. Civ. P. 23(e); *see also Amchem Prods. v. Windsor,* 521 U.S. 591, 617 (1997).

In determining whether preliminary approval is warranted, the primary issue before the Court is whether the proposed settlement is within the range of what might be found fair, reasonable, and adequate so that notice of the proposed settlement should be given to class members, and a hearing scheduled to determine final approval. *See* Manual for Complex Litigation, Fourth, § 13.14, at 172-73 (2004) ("Manual Fourth") (at the preliminary approval stage, "[t]he judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing."). Preliminary approval is therefore the first step in a two-step process required before a class action may be finally settled. *Id.* at § 21.632, at 320-21.

The Second Circuit adheres to a "strong judicial policy in favor of settlements, particularly in the class action context, and a settlement should be approved if it is fair, adequate, and reasonable, and not a product of collusion." *Wal-Mart Stores, Inc., v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quotations omitted).  In addition, courts encourage early settlement

of class actions "because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Viafara v. MCIZ Corp., Viafara v. MCIZ Corp.*, 2014 U.S. Dist. LEXIS 60695, *15 (S.D.N.Y. Apr. 30, 2014) (collecting cases); *see also Clem v. KeyBank, N.A.*, 2014 U.S. Dist. LEXIS 87174, *12-13 (S.D.N.Y. June 20, 2014) (commending parties for acting responsibly in reaching early settlement). Further, where, as here, a settlement is negotiated at arm's length by capable counsel, the settlement is presumed to be satisfactory. *Wal-Mart Stores,* 396 F.3d at 116. Moreover, in this case, the Parties enlisted the services of a neutral mediator, further reinforcing that the Settlement Agreement is non-collusive. *Hernandez v. Anjost Corp.*, 2013 U.S. Dist. LEXIS 116048 (S.D.N.Y. Aug. 14, 2013).

In *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), the Second Circuit Court of Appeals set forth the analytical framework for evaluating the substantive fairness of a class action settlement. As detailed below, the Settlement Agreement here satisfies the *Grinnell* standards.

Similarly, a settlement of an FLSA collective action is not effective unless it is judicially approved. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). However, settlement of a collective action does not implicate the same Due Process concerns as the settlement of a class action because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013) (quotations omitted). Accordingly, an FLSA settlement is examined with somewhat less scrutiny than a class action settlement; the court simply asks whether the proposed settlement reflects a fair and reasonable compromise of disputed issues that were reached as a result of contested litigation. The "relevant standard in this

18

Circuit for approval of FLSA settlements, which is lower than that for Rule 23 settlements, is that '[c]ourts generally approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes.'" *Brown v. Mustang Sally's Spirits & Grill, Inc.*, 2013 U.S. Dist. LEXIS 13482 at *2 (W.D.N.Y. Jan. 31, 2013); *see also Wolinsky*, 900 F. Supp. 2d at 335; *Riedel v. Acqua Ancien Bath N.Y., LLC*, 2016 U.S. Dist. LEXIS 68747, *21-22 (S.D.N.Y. May 19, 2016); *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 178 (S.D.N.Y. 2014). Here, the Settlement Agreement is no doubt the result of contested litigation to resolve a bona fide dispute.

### A.   The *Grinnell* Factors are Satisfied

In *City of Detroit v. Grinnell Corp.*, *supra*, the Second Circuit Court of Appeals set forth the long-standing analytical framework for evaluating the substantive fairness of a class action settlement.  This framework, known as the *Grinnell* factors, guides district courts by setting out the following factors for determining whether a proposed settlement should be approved: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  495 F.2d at 463.  As demonstrated below, application of these factors is more than sufficient for this Court to make a preliminary determination that the proposed Settlement is fair, reasonable, and adequate:

1.   Litigation Through Trial Would be Complex, Costly, and Long
(*Grinnell* Factor 1)

By reaching a settlement early in this litigation, the Parties have avoided extensive

litigation, and further expense and delay in obtaining a recovery for the members of the

Collective/Class.  "Most class actions are inherently complex and settlement avoids the costs,

delays, and multitude of other problems associated with them."  *In re Austrian & German Bank*

*Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche*

*Bank*, 236 F.3d 78 (2d Cir. 2001).  Particularly in complex wage and hour litigation like this one,

involving both federal and state statutory rights, protracted litigation is costly and burdensome,

including motion practice and potential appeals over class and collective certification.  *See*

*Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 U.S. Dist. LEXIS 23016 (S.D.N.Y. Mar. 24, 2008).

The continued process of litigating would have been time consuming, as experience has often

shown in wage and hour cases.  Lesser Dec. at ¶ 23.

Here, absent the settlement, extensive discovery and motion practice would have

followed concerning, among other things, whether liquidated damages under the FLSA and

various state laws could be recovered.  Under the FLSA and similar state laws, liquidated

damages, in essence, cannot be recovered if the defendant meets its burden of establishing that it

acted in good faith.  Although the cause of the failure to pay wages for all hours worked was due

to the Kronos Outage, litigation would have focused on Defendants' dependence on Kronos and

lack of a back-up system.  Whether such evidence would be sufficient to counter Defendants'

evidence that they responded quickly and responsibly to circumstances beyond their control and

ended up overpaying their employees by approximately $60 million could take years to resolve

given the need for extensive discovery, including depositions, discovery motions, motions for

summary judgment, motions *in limine*, and oppositions to such motions.  Additionally, this issue

20

likely would have to be tried.  Preparing and presenting testimonial and documentary evidence with respect to the complex factual and legal issues at such a trial would have consumed tremendous amounts of time and resources, as well as required substantial judicial resources to adjudicate the Parties' disputes.  Litigation over attorneys' fees could have followed. Finally, any judgment would likely have been appealed. This settlement, on the other hand, provides significant relief in a prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in favor or preliminary approval.

> 2. The Court Cannot Assess Reaction of the Class until After Notice Issues (*Grinnell* Factor 2)

Because Class Members have not yet been notified of the Settlement, the Court will be in a better position to more fully analyze this factor after notice issues and the National Class members have an opportunity to opt-out or object to the Settlement. This factor is therefore neutral and does not preclude the Court from granting preliminary approval.

> 3. The Parties are Well-Informed to Resolve the Case Responsibly (*Grinnell* Factor 3)

The Parties were well-informed in reaching this Settlement.  Plaintiffs' counsel have spoken to dozens of National Class Members impacted by the Kronos Outage from across the country which discussions provided extensive knowledge as to the facts and circumstances involving the claims in this case.  Lesser Dec. at ¶ 24.  Plaintiffs' counsel also conducted extensive research as to the federal and state law claims at issue in this litigation.  *Id.* at ¶ 25.  Additionally, Defendants shared with Plaintiffs' counsel significant data and analysis regarding the underpayments at issue, the amounts they believe are owed, the number of individuals impacted (all of which was analyzed by Plaintiffs' counsel), and generally the steps they have taken in response to the Kronos Outage.  *Id.* at ¶ 26.  The Parties also had the benefit of two full days of mediation – approximately two weeks apart - during which additional questions were answered and information was exchanged. *Id.* at ¶ 27.  Finally,

Plaintiffs have completed the Confirmatory Discovery, which included a review of the materials

discussed above at Section III(A) as well as interviews of Defendants' representatives Robin Johnson

and Robin Phipps to address the questions and concerns of Plaintiffs' counsel.  *Id.* at ¶ 20.

The essential question this factor poses is "whether counsel had an adequate appreciation

of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d

516, 537 (3d Cir. 2004) (citations omitted); *see also Ballinger v. Advance Magazine Publrs.,*

*Inc.*, 2014 U.S. Dist. LEXIS 179538 (S.D.N.Y. Dec. 29, 2014) (granting preliminary approval

where case was "settled before depositions were conducted…[but] both sides were well

acquainted with the facts and the nature" of the claims at issue).  Based on the foregoing, the

Parties were well-informed when drafting and agreeing to the proposed Settlement, and this

factor favors Preliminary Approval.

4.   Plaintiffs Would Face Real Risks of Establishing Liability and Damages
If the Case Proceeded (*Grinnell* Factors 4 and 5)

"Litigation inherently involves risks." *In re Paine Webber Ltd. P'Ships Litig.*, 171 F.R.D.

104, 126 (S.D.N.Y. 1997).  Although Plaintiffs believe their case is strong, it is nevertheless

subject to risk.  Indeed, if "settlement has any purpose at all, it is to avoid a trial on the merits

because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934

(S.D.N.Y. 1969).  In weighing the risks of establishing liability and damages, the court "must

only weigh the likelihood of success by the plaintiff class against the relief offered by the

settlement."  *In re Holocaust Litig.*, 80 F. Supp. 2d at 177 (internal quotation marks and citation

omitted).

Here, Plaintiffs recognize the substantial risks of proceeding with this litigation,

including the possibility that after extensive litigation and a trial, Plaintiffs might not recover any

liquidated damages or state law penalties, given the cause of the failure to pay their employees

for all hours worked was the Kronos Outage, or might result in a recovery less favorable to the State Law Class.  Plaintiffs would have to prevail at trial and on appeal, a process which is inherently uncertain and lengthy.  But even the possibility that the class "might have received more if the case had been fully litigated is no reason not to approve the settlement."  *Granada Invest., Inc. v. DWG Corp.,* 962 F.2d 1203, 1206 (6th Cir. 1992) (quotation omitted).  The proposed settlement "provides for relief now, not some wholly speculative payment of a hypothetically larger amount years down the road."  *Strougo v. Bassini,* 258 F. Supp. 2d 254, 260 (S.D.N.Y. 2003).   This factor therefore supports preliminary approval of the Settlement.

> 5. Establishing and Maintaining the Class Through Trial Presents Risk
> (*Grinnell* Factor 6)

Absent this Settlement, Plaintiffs anticipate that Defendants would oppose any class or collective certifications. While Plaintiffs believe that this case is ideally suited for class and collective certification, there are no guarantees this Court will agree.  Meanwhile, the Settlement proposed here includes relief for over 60,0000 impacted employees of PepsiCo and New Tiger and their respective subsidiaries, who were employed in over 40 states.  This factor favors preliminary approval of the Settlement.

> 6. Defendants' Ability to Withstand a Greater Judgment is Not
> Determinative (*Grinnell* Factor 7)

There is no doubt that Defendants here together comprise a very large corporate entity, and there has been no representation that Defendants would not be able to pay a larger judgment.  The Settlement discussions here have not been cabined in any way by the ability to pay on behalf of Defendants.  Nevertheless, the Settlement eliminates any risk of collection at a future date by requiring Defendants to pay the full settlement amount shortly after final approval of the settlement. Settlement Agreement, §5(b).  Accordingly, this factor is neutral.

7. <u>The Settlement is Substantial, Even in Light of the Best Possible Recovery and Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)</u>

As discussed above, following the mediation at which an agreement-in-principle to settle was reached, Defendants made the May 6 payments to National Class members of approximately $23.9 million to compensate them for underpayments that occurred during the Kronos Outage period, which Defendants have represented is 100% recovery of unpaid wages owed. Plaintiffs have confirmed this appears to be correct, but Plaintiffs insisted in the settlement negotiations this be backstopped by a robust procedure pursuant to which any National Class Member who believed the amount of his or her repayment was inadequate could challenge that amount. Such a procedure was ensured, and, in addition, Plaintiffs' counsel hereafter will aid any National Class Member who wishes to pursue a challenge.  And, further, Defendants will pay an *additional* $12.75 million as a negotiated amount representing liquidated damages due under the FLSA and state laws and penalties available under the laws of New York and California because of Defendants' untimely wage payments, inaccurate wage statements and inaccurate time records.

The best possible recovery for liquidated damages is $23.9 million and the best possible recovery for the New York and California penalties is estimated to be approximately $23.3 million, for a total of approximately $47.2 million in value for the state and FLSA statutory penalties.  Lesser Dec. at ¶ 28.[9]  Thus, in addition to the 100% recovery for direct overtime pay ($23.9 million), the recovery here therefore represents almost 52% of the total value of the claims when this litigation began ($36.65 million / $71.1 million) and, if considered separately, 27% of the value of the

---

[9]  While many states have the same liquidated damage provision as the FLSA, recovering the same liquidated damages twice is not permitted.  *See Chowdhury v. Hamza Express Food Corp.*, 666 Fed. Appx. 59, 60-61 (2d Cir. 2016).  Additionally, while Arizona has a statute that provides that an "employee *may* recover . . . an amount which is treble the amount of the unpaid wages, together with costs and reasonable attorneys' fees . . ." (ARS 23-355), such an award is discretionary and not available here inasmuch as the Arizona courts have held that this provision is "a punitive measure that is warranted when employers seek to delay payment without reasonable justification or to defraud employees of wages earned."  *Crum v. Maricopa County*, 190 Ariz. 512, 516 (1997).

liquidated, statutory claims, claims that, as discussed, Plaintiffs faced significant hurdles in recovering. As to the latter, as noted, in particular, Plaintiffs would have to overcome Defendants' defense that they have acted in good faith at all relevant times, that the facts in this case are novel and without precedent, and that no liquidated damages or penalties should be due at all. This Settlement therefore represents a strong outcome for Plaintiffs and the National Class. It is certainly within the range of possibility that, after lengthy and expensive litigation and trial, and appeals, Plaintiffs may not have recovered any liquidated damages or penalties or an amount that would be significantly less than provided in the Settlement. Indeed, Plaintiffs respectfully submit that the results here represent an outstanding recovery in favor of the National Class, an opinion further underscored by the manner in which Defendants agreed, by virtue of the settlement, not to see recoupment of the approximate $60 million in overpayments.

B.   The Settlement Resolves Contested Litigation over a Bone Fide Dispute

Where an FLSA settlement reflects a reasonable compromise over bona fide contested issues, it should be approved. *See Brown*, 2013 U.S. Dist. LEXIS 13482, at *2. The existence of *bona fide* contested issues here is clear: it is undisputed that due to the Kronos Outage, Defendants were unable to accurately and timely pay their employees for all hours worked during the Kronos Outage and not until May 6.

However, Defendants' liability for liquidated damages and penalties as a result of their failure to accurately and timely pay their employees for all hours worked is, and would continue to be, vigorously contested, as has already been discussed and need not be repeated here. In short, there are disputed issues as to whether Defendants acted in good faith, and each side would have substantial arguments to support its legal position on contested issues. Accordingly, the Court should find that a *bona fide* dispute existed between the Parties under the FLSA, and as such the Settlement should be preliminarily approved.

25

IV.   **The FLSA Collective, Class, and Subclasses Should be Certified for Settlement Purposes**

As noted, the Parties have agreed, for settlement purposes only, to certification of a proposed Collective and National Class consisting of all current and former employees of a Defendant in the United States who were impacted by the Kronos Outage.  Additionally, Parties have agreed, for settlement purposes only, to certification of the New York Subclass consisting of all current and former employees of a Defendant in New York who were impacted by the Kronos Outage and of the California Subclass consisting of all current and former employees of Defendants in California who were impacted by the Kronos Outage.  For the following reasons, Plaintiffs submit that the Collective meets all requirements for conditional certification pursuant to the FLSA, and the National Class and Subclasses meet all of the requirements for certification under Fed. R. Civ. Pro Rules 23(a) and 23(b)(3), as discussed below.

Additionally, it is well recognized that the requirements for conditional certification of a collective action under Section 16(b) of the FLSA (28 U.S.C. § 216(b)) are more lenient than those under Rule 23.  *E.g.*, *Cruz v. Lyn-Rog Inc*., 2010 WL 4923927, *2 (E.D.N.Y. 2010) ("Courts have repeatedly stated that Section 216(b)'s 'similarly situated' requirement is 'considerably less stringent' than the requirements for class certification under Rule 23.") (*quoting Rodolico v. Unisys Corp*., 199 F.R.D. 468, 480 (E.D.N.Y. 2001)); *Cabrera v. 211 Garage Corp*., 2008 U.S. Dust. LEXIS 67050, *7 (S.D.N.Y. Aug. 22, 2008) ("The requirements for Rule 23 class certification are far more stringent than those for conditional collective action certification under § 216(b).").   As discussed below, all of the Rule 23 certification requirements for settlement purposes are met for the proposed National Class, and consequently, the conditional certification requirements under the FLSA are met as well.

Preliminary settlement class certification and appointment of class representatives and class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed settlement, and setting the date and time of the final approval hearing. *See Dorn v. Eddington Sec., Inc.*, 2011 U.S. Dist. LEXIS 11931, *3 (S.D.N.Y. Jan. 20, 2011)

### A.  <u>The Rule 23(a) Factors Are Met</u>

#### 1.  **Numerosity**

One of the prerequisites to a class action is that the class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The word "impracticable" is key.  As the Second Circuit has explained, the numerosity requirement "does not mandate that joinder of all parties be impossible — only that the difficulty or inconvenience of joining all members of the class ma[kes] use of the class action appropriate."  *Central States Southeast v. Merck-Medco,* 504 F.3d 229, 244-45 (2d Cir. 2007); *see also Goldstein v. North Jersey Trust Co.,* 39 F.R.D. 363, 367 (S.D.N.Y. 1966) (explaining that "impracticable" does not mean "incapable of being performed" or "infeasible").

Here, the proposed National Class includes approximately sixty-five thousand members. In addition, there are 2,551 New York Subclass members and 6,845 California Subclass members.  Numerosity has therefore clearly been established with regard to the National Class and the Subclasses.

#### 2.  **Commonality and typicality**

Rule 23(a)'s commonality requirement is met if plaintiffs' grievances share a common question of law or of fact (*see In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 145, 166-67 (2d Cir. 1987)), while typicality is satisfied when each class member's claim arises from the same

course of events and each class member makes similar legal arguments to prove the defendant's liability. *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562 (2d Cir. 1968), *vacated on other grounds,* 417 U.S. 156 (1974). In practice, Rule 23(a)'s commonality and typicality criteria "'tend to merge' because '[b]oth serve as guideposts for determining whether … the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence.'" *Caridad v. Metro-N. Commuter R.R.,* 191 F. 3d 283, 291 (2d Cir. 1999) (*quoting General Tele. Co. v. Falcon,* 457 U.S. 147, 157 n. 13 (1982)).

Here, there the commonality and typicality requirements are met because all claims in this case arise from the same, single course of events: namely, the Kronos Outage, and the subsequent inability of Defendants to correctly process and timely pay State Law Class members during the Kronos Outage and until May 6. By the same token, each Plaintiff and National Class Member presents identical arguments with regard to Defendants' potential liability for liquidated damages under the FLSA and analogue state laws. The claims of the Plaintiffs and those of the Class Members thus present common questions that are so interrelated that the interests of the absent National Class Members will be fairly protected. The same is true with regard to the New York Plaintiffs and members of the New York Subclass, and California Plaintiffs and members of the California Subclass. The respective claims of each subclass will focus solely on the common issue of whether the penalties available under their respective state labor laws are recoverable here. The New York Plaintiffs and California Plaintiffs will advance the interests of every one of their respective subclass members in seeking the applicable state penalties.

### 3.  Adequacy

An examination of adequacy under Rule 23(a) has two aspects: the determination of whether "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson*, 222 F.3d 52, 60 (2d Cir. 2000).  "[T]he proposed class representative must have an interest in vigorously pursuing the claims of the class and must have no interests antagonistic to the interests of other class members." *Zivkovic v. Laura Christy L.L.C.*, No. 1:17-cv-553-GHW, 2018 U.S. Dist. LEXIS 204113, at *19 (S.D.N.Y. Nov. 30, 2018) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).  A conflict or potential conflict "must be fundamental" to defeat certification.  *In re Flag Telecom Holdings, Ltd. Securities Litigation*, 574 F.3d 29, 36 (2d Cir. 2009) (*quoting In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 145 (2d Cir. 2001)).

Given the interrelatedness of the Plaintiffs and National Class Members' claims, the New York Plaintiffs and the New York Subclass members and the California Plaintiffs and the California Subclass members, the Plaintiffs have every incentive to pursue the National Class Members' claims vigorously, the New York Plaintiffs have every incentive to pursue the New York Subclass members' claims, and the California Plaintiffs have every incentive to pursue the California Subclass members' claims.  Nor does any conflict exist between the interests of the Plaintiffs and those of the National Class members, the New York Plaintiffs and those of the New York Subclass members or the California Plaintiffs and those of the California Subclass members, much less the "fundamental" conflict that would defeat class certification.  Thus, while the claims of the Plaintiffs, New York Plaintiffs and California Plaintiffs may not be identical to

every claim, respectively, of every State Law Class Member, New York Subclass member, and California Subclass member, they will adequately represent their respective classes.

With respect to the qualifications of Plaintiffs' counsel, it is entirely reasonable and fair to say that counsel for the Plaintiffs have extensive backgrounds, history, and records of success in representing employees in collective claims under the FLSA and class claims under state laws. Lesser Dec. at ¶ 29 & Lesser Dec. Ex. B.   Adequacy has therefore been established in this case.

## B.  The Rule 23(b)(3) Factors Are Met

Rule 23(b)(3) permits class certification "if the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  This Rule "encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  Fed. R. Civ. P. 23(b)(3) adv. comm. n. to 1966 amend.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  Rule 23(b)(3) requires that common issues of law and fact predominate, but "predominance does not require a plaintiff to show that there are no individual issues." *In re NYSE Specialists Securities Litigation*, 260 F.R.D. 55, 75 (S.D.N.Y. 2009).  Here the common issue of whether the members of the National Class are entitled to liquidated damages will predominate over individual issues, if any; the common issue of whether the members of the New York Subclass are entitled to applicable penalties under the New York Labor Law will predominate over individual issues, if any; the common issue of whether the members of the California Subclass are entitled to

applicable penalties under the California Labor Law will predominate over individual issues, if any.

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.,* 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action, including: whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[10]

Plaintiffs submit that the requirements of Rule 23(b)(3) are met because a class that will determine the issues common to all class members and fix compensation for alleged injury is far superior to numerous trials that would risk disparate results for similarly situated individuals. The cost of litigation on a case-by-case basis would clearly be extremely costly, and such piecemeal litigation would tax the resources of the judiciary. Accordingly, certification of the National Class and Subclasses here is superior to other available methods for the fair and efficient adjudication of the present controversy. Furthermore, no other member of the State Law Class, New York Subclass or California Subclass have brought individual actions related to the matters contested here.

For all the reasons stated above, the National Class, New York Subclass and California Subclass meet the requirements of Rule 23(a)(1) and (b)(3).

---

[10] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem,* 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 183 (W.D.N.Y. 2005) ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement.").

Accordingly, preliminary certification of the National Class, New York Subclass, California Subclass, and conditional certification of the FLSA Collective is warranted.  So too is appointment of Plaintiffs as Class Representatives of the National Class; Plaintiffs Matthew White and Thomas Parrish as Subclass Representatives of the New York Subclass; Plaintiffs Ricardo Vidaud, Moises Madriz, Jorge Mendoza and Rodney Ulloa as Subclass Representatives of the California Subclass proposed representatives for the California Subclass; and Plaintiffs' counsel as Class Counsel for the National Class and the Subclasses.

## V.    The Proposed Notice Will Provide Adequate Notice to The Members of the National Class and FLSA Collective and the Members of the Subclasses

Plaintiffs request that the Court approve the proposed Notice attached as Exhibit D to the Settlement Agreement for distribution. The Notice fully complies with due process and Federal Rule of Civil Procedure 23. Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
>
> (i)  the nature of the action;
> (ii)  the definition of the class certified;
> (iii)  the class claims, issues, or defenses;
> (iv)  that a class member may enter an appearance through an attorney if the member so desires;
> (v)  that the court will exclude from the class any member who requests exclusion;
> (vi)  the time and manner for requesting exclusion; and
> (vii)  the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The Notice satisfies each of these requirements. The Notice is written in plain English and is organized and formatted so as to be as clear as possible. It is based on the model notice forms provided by the Federal Judicial Center ("FJC") on its website (www.fjc.gov). *See Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2010 WL 5508296, at *2 (S.D.N.Y. Dec. 22, 2010)

32

(approving FLSA collective action notice based on FJC model); *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 224-25 (D.N.J. 2005) (same regarding class settlement notice). Additionally, the Notice describes the terms of the settlement, informs the class about their rights to request exclusion or object and the deadlines for doing so (45 days after the mailing or emailing of the Notice). It also informs class members about how individual class members' recovery will be calculated. It also provides specific information regarding the date, time, and place of the final approval hearing. And, pursuant to Fed. R. Civ. P. 23(h), sets forth the maximum amount of Attorneys' Fees and Costs and Service Award Payments which may be sought by Plaintiffs' counsel. Accordingly, the Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. *See, e.g.*, 4 Newberg on Class Actions at §§ 8.21, 8.39; Manual Fourth at §§ 21.311-21.312.

The Settlement Agreement also provides that the Settlement Administrator will provide the Notice to Collective/Class members by email and first class mail within twenty-one days after entry of the Preliminary Approval Order. For any returned Notices, the Settlement Administrator will conduct reasonable address verification efforts consistent with the customary practices in the settlement administration industry. *See* Settlement Agreement, §12(a)-(b). This notice plan is consistent with, for example, the notice approved by this Court in *Imbarrato v. Banta Mgmt. Servs., Inc.*, 2022 U.S. Dist. LEXIS 75179 (S.D.N.Y. Apr. 25, 2022) (Roman, *J.*) (authorizing dissemination of notice via U.S. Mail and email).

**VI.  This Court May Enjoin the Related State Court Action**

The Settlement before the Court, as noted, and including this action, encompasses fifteen FLSA and state class action lawsuits that were filed in twelve federal district courts across the

country.  There were, in addition to these cases, a state court case and two other federal court cases filed also alleging wage and hour claims against certain of the Defendants here due to the Kronos outage. [11]  As part of the preliminary approval order and pursuant to its authority to protect its jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a), the parties ask the Court to enjoin that state court action, *William Muller and Jamaar Codrington, et al. v. PepsiCo, Inc., New Bern Transport Corporation, Bottling Group, LLC, et al.*, Case No. CGC-22-597909 (San Francisco Superior Court) (filed January 28, 2022),  during the pendency of its consideration of the present settlement.[12]

---

[11] The first of these federal court cases, *Starr Montgomery, et al., v. Frito-Lay, Inc., Rolling Frito-Lay Sales, LP, and FL Transportation, Inc.*, Case No. 3:22-cv-00185-G, in the U.S. District Court for the Northern District of Texas, filed January 27, 2022, will be dismissed upon the Effective Date of this Settlement.  The other, and recently filed, federal court action is *Brian Hill, Jason Mathis, and Cruz Vasquez, et al. v. Frito-Lay, Inc.*, Case No. 4:22-cv-00518, in the U.S. District Court for the Eastern District of Texas, filed June 22, 2022, and Defendants will be filing a first filed motion to stay and/or dismiss that case.

    In addition, although not specifically arising out of the Kronos Outage, there are eight state court cases, all in California, that allege claims against Defendants that have overlapping time periods that may be partially impacted by the settlement: *Christopher Butler, Ralph Sanchez, and Saul Alvarez-Cardenas, et al. v. Bottling Group, LLC dba Pepsi Beverages, PepsiCo, Inc.; Rolling Frito-Lay Sales, LP, and Does 1 through 25*, Case No. T22116, in the Superior Court of Sacramento County, California, filed April 29, 2022; *Magdaleno J. Nuno, et al. v. PepsiCo Beverage Sales, LLC, Pepsi Beverage Company, et al.*, Case No. 22 ST CV 14444, in the Superior Court of the State of California, County of Los Angeles, filed April 29, 2022; *Anthony Robles, et al. v. PepsiCo Beverage Sales, LLC, et al.*, Case No. CIVSB2204715, in the Superior Court of the State of California, County of San Bernardino, filed March 28, 2022; *Robert Salas, et al. v. Bottling Group, LLC d/b/a Pepsi, et al.*, Case No. 22-cv-394359, in the Superior Court of the State of California, County of Santa Clara, filed February 15, 2022; *Robert Salas, et al. v. Bottling Group, LLC d/b/a Pepsi, et al.*, Case No. 22-cv-397279, in the Superior Court of the State of California, County of Santa Clara, filed April 25, 2022; *Joseph Skates v. Bottling Group, LLC; CB Manufacturing Company, Inc., et al.*, Case No. 34-2022-00318975, in the Superior Court of the State of California, County of Sacramento, filed April 27, 2022; *Joseph Skates, et al. v. Bottling Group, LLC; CB Manufacturing Company, Inc., et al.*, Case No. 34-2022-00318959, in the Superior Court of the State of California, County of Sacramento, filed April 27, 2022; *Dustin Tynes v. Rolling Frito-Lay Sales LP, et al.*, Case No. T22-491, in the Superior Court of the State of California, County of Ventura, filed April 18, 2022.  No relief is sought from this Court at this time as to these cases.

[12] In the event that the proposed settlement is finally approved, the parties will seek to make the injunction permanent as part of the judgment.  Obviously, the final injunction would not apply to any individual who opts-out of the settlement.

The All Writs Act grants this Court the authority to issue any writs "necessary or appropriate in aid" of its jurisdiction.  It is well-established that this "aid-of-jurisdiction" authority applies squarely to the circumstances here, when a federal court is presented with, as the Manual for Complex Litigation states, *"a class action settlement preliminarily or finally approved in the federal court." Manual for Complex Litigation, Fourth* (2004) at §21.15; *accord also id.* at §20.32 (the All Writs Act has "been used to effectuate global settlements in large scale litigation by enjoining or removing to federal court parallel state court litigation that would otherwise frustrate the adoption or implementation of comprehensive class settlements approved by the federal court as binding on the parties to the state court litigation"), §21.42 ("After certification, the federal court is authorized to issue an injunction 'when necessary in aid of its jurisdiction,' … to enjoin pending state litigation if settlement in the certified federal class action is completed or imminent and the need to protect the class settlement is shown.").  The rationale for an All Writs injunction has been well-summarized as follows:

> The threat to the federal court's jurisdiction posed by parallel state actions is particularly significant where there are conditional class certifications and impending settlements in federal actions.  Many--though not all--of the cases permitting injunctions in complex litigation cases involve injunctions issued as the parties approached settlement.  Complex cases in the later stages--where, for instance, settlement negotiations are underway--embody an enormous amount of time and expenditure of resources. It is in the nature of complex litigation that the parties often seek complicated, comprehensive settlements to resolve as many claims as possible in one proceeding. These cases are especially vulnerable to parallel state actions that may frustrate the district court's efforts to craft a settlement in the multi-district litigation before it, thereby destroying the ability to achieve the benefits of consolidation. In complex cases where certification or settlement has received conditional approval, or perhaps even where settlement is pending, the challenges facing the overseeing court are such that it is likely that almost any parallel litigation in other fora presents a genuine threat to the jurisdiction of the federal court.

*In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 236 (3d Cir. 2002) (multiple citations and quotation omitted).[13]

The Second Circuit Court of Appeals reached the same conclusion over thirty years ago in *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328 (2d Cir. 1985), wherein the Court upheld an injunction against the State of New York and numerous other states, which wished to bring their own suit to seek restitution on behalf of their state's citizens in the plaintiff class. *Id.* at 333. The district court had reasoned that such state lawsuits would "likely [] impair [the] federal court's jurisdiction" by undermining the settlements reached with the eighteen defendants and the ongoing settlement negotiations with the other eight defendants." *Id.* Thirty-one of the states appealed, but the Court of Appeals affirmed, holding that the injunction was necessary for the district court to preserve its jurisdiction because the ongoing settlement negotiations would be "frustrated by reason of the existence of competitive litigation, [such that] it would simply be impossible to implement them if they be approved, or to proceed with the class actions if . . . this court concludes to proceed on the merits," and because the state court actions could jeopardize its ability to rule on the settlements, would increase the cost of litigation, would create a risk of conflicting results, and would prevent the plaintiffs from benefiting from any settlement already negotiated or from reaching a new and improved settlement in the federal court. *Id.*

---

[13] *See also, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1018, 1024-25 (9th Cir. 1998) (class action with preliminarily-approved settlement where stay on state class actions prevented one plaintiff from opting out an entire subclass of plaintiffs from the same state), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 33 (2011); *Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 195, 202-04 (3d Cir. 1993) (class action with imminent settlement and fairness hearing where injunction prevented mass opting out of the plaintiffs of one state for duplicative state proceedings); *Battle v. Liberty Nat'l Life Ins. Co.*, 877 F.2d 877, 880-81 (11th Cir. 1989) (class action at judgment stage where injunction prevented state court litigation that would interfere with administration of post-judgment proceedings).

The same risks exist here:  the continued litigation of this related state court action equally threatens the viability of the proposed settlement and undermine the authority of this Court.  In addition, it could confuse and impair the efficacy of the notice sent to the classes, and especially the California Subclass, about the settlement.  The requested stay is appropriate to aid the Court in its jurisdiction and should therefore be granted.

## VII.   A Final Approval Hearing Should be Scheduled

The Court should schedule a final fairness hearing to determine that final approval of the Settlement is proper.  The fairness hearing will provide a forum to explain, describe or challenge the terms and conditions of the Settlement, including the fairness, adequacy, and reasonableness of the Settlement.  At least two weeks prior to that hearing, moreover, Plaintiffs' Counsel will file their application for their attorneys' fees and expenses pursuant to Rule 23(h) as well as for Service Awards to the Plaintiffs for their service in coming forward to sue their employers, which application will be addressed at the hearing.  Accordingly, the Parties request that the Court schedule the final fairness hearing for not less than one hundred (100) days from the date of this motion, as required by 28 U.S.C. § 1715.

## VIII.   Conclusion

For the foregoing reasons, Plaintiffs respectfully request that this Court enter the Preliminary Approval Order, attached as Exhibit B to the Settlement Agreement.

Dated:  July 15, 2022                              Respectfully submitted,

KLAFTER LESSER LLP
  */s/ Seth R. Lesser*
Seth R. Lesser Bar No. SL5560
Christopher M. Timmel Bar No. CT9831
Two International Drive, Suite 350
Rye Brook, NY 10573
Telephone: (914) 934-9200
E-mail: seth@klafterlesser.com
E-mail: christopher.timmel@klafterlesser.com

SCOTT & WINTERS LAW FIRM, LLC
   */s/ Ryan A. Winters*
Joseph F. Scott
(*admitted pro hac vice*)
Ryan A. Winters
(*admitted pro hac vice*)
Kevin M. McDermott II
(*admitted pro hac vice*)
The Caxton Building
812 Huron Rd. E., Suite 490
Cleveland, OH 44115
Telephone: 216-912-2221
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com
kmcdermott@ohiowagelawyers.com


PARMET PC
   */s/ Matthew S. Parmet*
Matthew S. Parmet
(*admitted pro hac vice*)
3 Riverway, Ste. 1910
Houston, TX 77056
Telephone:  713-999-5228
matt@parmet.law

MORGAN & MORGAN, P.A.
   */s/ Andrew R. Frisch*
Andrew R. Frisch
8151 Peters Road, Ste. 4000
Plantation, FL 33324
Telephone:  954-318-0268
AFrisch@forthepeople.com

*Attorneys for Plaintiffs, Proposed FLSA Settlement Collective, and Proposed Fed. R. Civ. P. 23 Settlement Class and Subclasses*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on July 15, 2022, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sends notification of such filing to the following counsel of record:

Linda H. Joseph, Esq.
Ginger D. Schröder, Esq.
SCHRÖDER, JOSEPH & ASSOCIATES, LLP
394 Franklin St., 2nd Floor
Buffalo, NY 14202
Phone (713) 881-4901
Fax (716) 881-4909
Email: ljoseph@sjalegal.com

Alison Ashmore
Dykema Gossett PLLC
1717 Main Street
Suite 4200
Dallas, TX 75201
214-462-6400
Fax: 866-781-2975
Email: aashmore@dykema.com

**KLAFTER LESSER, LLP**

/s/ Seth R. Lesser
Seth R. Lesser