# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

EMANUELE STEVENS, individually and on
behalf of all others similarly situated,

        Plaintiff,

v.

PEPSICO INC., BOTTLING GROUP,
LLC, CB MANUFACTURING COMPANY,
INC., FL TRANSPORTATIONS, INC.,
FRITO-LAY, INC., GOLDEN GRAIN,
INC., GRAYHAWK LEASING, LLC,
JUICE TRANSPORT, INC., NEW BERN
TRANSPORT CORPORATION, PEPSI
NORTHWEST BEVERAGES, LLC, PEPSI-
COLA SALES & DISTRIBUTION, INC.,
PEPSI-COLA BEVERAGE SALES, LLC,
PEPSICO SALES, INC., QUAKER
MANUFACTURING, LLC, ROLLING
FRITO-LAY SALES, LP, SVC
MANUFACTURING, INC., TROPICANA
MANUFACTURING CO., TROPICANA
PRODUCT SALES, INC., TROPICANA
SERVICES, INC.,

        Defendants.

CASE NO. 7:22-cv-00802-NSR

---

MOISES MADRIZ AND RODNEY
ULLOA, individually and on behalf of all
others similarly situated,

        Plaintiff,

v.

PEPSICO, INC.; NAKED JUICE CO.;
NAKED JUICE CO. OF GLENDORA,
INC.; TROPICANA PRODUCTS, INC.;
and TROPICANA SERVICES, INC.,

        Defendants.

CASE NO. 1:22-cv-04851-NSR

i

| | | |
|---|---|---|
| RICARDO VIDAUD, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 1:22-cv-04850-NSR |
| PEPSICO INC., | ) ) | |
| Defendant. | ) ) ) | |
| SETH MARSHALL and MATTHEW WHITE, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 7:22-cv-02370-NSR |
| PEPSICO INC., BOTTLING GROUP, LLC, and CB MANUFACTURING COMPANY, INC., | ) ) ) ) | |
| Defendants. | ) ) ) | |
| TYRELL KING, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 4:22-cv-00360-KGB |
| PEPSICO INC., | ) ) | |
| Defendant. | ) ) ) | |
| KENNETHA MITCHELL, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 7:22-cv-04555-NSR |
| PEPSICO INC., | ) ) | |
| Defendant. | ) | |

| | |
|---|---|
| DONEDWARD WHITE, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO. 7:22-cv-05198-NSR ) |
| PEPSICO INC., | ) ) |
| Defendant. | ) ) |
| JAMAL WINGER, individually and on behalf of all others similarly situated, | ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO. 1:22-cv-04828-NSR ) |
| THE QUAKER OATS CO., | ) ) |
| Defendant. | ) ) |
| ALLISON POULSON, individually and on behalf of all others similarly situated, | ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO. 7:22-cv-05196-NSR ) |
| PEPSICO INC. d/b/a PFS and FRITO-LAY, INC. | ) ) |
| Defendants. | ) ) |
| ROBNEY IRVING-MILLENTREE, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO. 1:22-cv-04784-NSR ) |
| PEPSICO INC., | ) ) |
| Defendant. | ) ) |

TRACY ELLIS,
individually and on behalf of all others
similarly situated,

   Plaintiff,

v.

PEPSICO INC.,

   Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. 7:22-cv-05200-NSR

---

THOMAS PARRISH, individually and on
behalf of all others similarly situated,

   Plaintiff,

v.

FRITO-LAY NORTH AMERICA, INC. and
PEPSICO, INC.

   Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. 7:22-cv-04556-NSR

---

DEVIN DROBSCH, individually and on
behalf of all others similarly situated,

   Plaintiffs,

v.

PEPSICO INC.,

   Defendant.

)
)
)
)
)
)
)
)
)
)
)

CASE NO. 7:22-cv-04216-NSR

---

JOSHUA SMITH, individually and on behalf
of all others similarly situated,

   Plaintiff,

v.

PEPSICO INC.,

   Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. 7:22-cv-04238-NSR

| | |
|---|---|
| JACOB TSCHUDY, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) CASE NO. 7:22-cv-04212-NSR |
| PEPSICO INC., | ) ) |
| Defendant. | ) ) ) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT, FOR AWARD OF ATTORNEYS' FEES AND EXPENSES, AND FOR APPROVAL OF SERVICE PAYMENTS TO THE NAMED PLAINTIFFS**

**KLAFTER LESSER LLP**
Seth R. Lesser Bar No. SL5560
Christopher M. Timmel Bar No. CT9831
Two International Drive, Suite 350
Rye Brook, NY 10573
Telephone: (914) 934-9200

**PARMET PC**
Matthew S. Parmet
(admitted pro hac vice)
3 Riverway, Ste. 1910
Houston, TX 77056
Telephone:  713-999-5228

**SCOTT & WINTERS LAW FIRM, LLC**
Joseph F. Scott
(admitted pro hac vice)
Ryan A. Winters
(admitted pro hac vice)
Kevin M. McDermott II
(admitted pro hac vice)
The Caxton Building
812 Huron Rd. E., Suite 490
Cleveland, OH 44115
Telephone: 216-912-2221

**MORGAN & MORGAN, P.A.**
Andrew R. Frisch
8151 Peters Road, Ste. 4000
Plantation, FL 33324
Telephone:  954-318-0268

*Attorneys for Plaintiffs, Proposed FLSA Settlement Collective, and Proposed Fed. R. Civ. P. 23 Settlement Class and Subclasses*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

I.     RELEVANT PROCEDURAL HISTORY ...................................................... 3

II.    FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE ............................. 4

       A.     The Settlement Is Fair, Reasonable, and Adequate .................................... 4

III.   PLAINTIFFS' REQUESTS FOR ATTORNEYS' FEES, COSTS, AND SERVICE
       PAYMENTS ARE REASONABLE AND SHOULD BE APPROVED ......................... 6

       A.     The Percentage Method is the Preferred Method in the Second Circuit for
              Awarding Attorneys' Fees in a Common Fund Case .................................... 6

       B.     Plaintiff's Request for Attorneys' Fees Is Reasonable ................................. 7

              1.     Class Counsel Have Expended Significant Time and Labor, and the
                     Settlement Requires Class Counsel to Expend Significant Time and Labor
                     Post-Settlement ............................................................................ 8

              2.     The Magnitude and Complexity of the Litigation ........................... 10

              3.     The Risk of Litigation .................................................................. 11

              4.     The Class Members are Represented by Class Counsel with Significant
                     Experience in Wage and Hour Litigation ...................................... 12

              5.     Class Counsels' Fee Request is Lower Than What This Circuit Typically
                     Awards ...................................................................................... 13

              6.     Public Policy Considerations Favor The Fee Requested ............... 14

       C.     The Lodestar Cross Check Further Supports an Award to Class Counsel of One-
              Third of the Settlement Fund ................................................................... 15

       D.     The Court Should Approve Payment of Costs and the Settlement Expenses from
              the Settlement Fund ................................................................................ 17

       E.     Service Payments to Named Plaintiff Should Be Approved ......................... 18

CONCLUSION ..................................................................................................... 19

## TABLE OF AUTHORITIES

*Arrington v. Optimum Healthcare IT, LLC,*
    2018 U.S. Dist. LEXIS 186192 (E.D. Pa. Oct. 31, 2018) ........................................... 14

*Asare v. Change Grp. of N.Y., Inc.,*
    2013 U.S. Dist. LEXIS 165935 (S.D.N.Y. Nov. 15, 2013) ....................................... 6

*Beckman v. KeyBank, N.A.,*
    293 F.R.D. 467 (S.D.N.Y. 2013) ............................................................ 9, 14

*Bryant v. Potbelly Sandwich Works, LLC,*
    2020 U.S. Dist. LEXIS 21900 (S.D.N.Y. Feb. 4, 2020) ......................................... 6

*Chambery v. Tuxedo Junction Inc.,*
    2014 U.S. Dist. LEXIS 101939 (W.D.N.Y. July 25, 2014) ...................................... 18

*Cheeks v. Freeport Pancake House, Inc.,*
    796 F.3d 199 (2d Cir. 2015) ................................................................. 5

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) ................................................................. 4

*Clark v. Ecolab Inc., Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672,*
    2010 U.S. Dist. LEXIS 47036 (S.D.N.Y. May 11, 2010) ....................................... 16

*Corzine v. Whirlpool Corp.,*
    2019 U.S. Dist. LEXIS 223341 (N.D. Cal. Dec. 31, 2019) ...................................... 17

*Davis v. J.P. Morgan Chase & Co.,*
    827 F. Supp. 2d 172 (W.D.N.Y. 2011) ....................................................... 7

*Dupler v. Costco Wholesale Corp.,*
    705 F. Supp. 2d 231 (E.D.N.Y. 2010) ....................................................... 5

*Fikes Wholesale, Inc., v. HSBC Bank USA, N.A., No. 20-339*
    (2d Cir. March 15, 2023) ................................................................... 19

*Fisher v. SD Prot. Inc.*
    948 F.3d 593 (2d Cir. 2020) ............................................................ 14, 16

*Frank v. Eastman Kodak, Co.,*
    228 F.R.D. 174 (W.D.N.Y. 2005) ........................................................... 18

*Goldberger v. Integrated Res., Inc.,*
    209 F.3d 43 (2d Cir. 2000) .......................................................... 7, 8,10, 15

*Grottano v. City of N.Y.,*
 2021 U.S. Dist. LEXIS 227995 (S.D.N.Y. Nov. 29, 2021) ...................................................... 5

*In re Equifax Inc. Customer Data Security Breach Litig.,*
 U.S. Dist. LEXIS 7841 (N.D. Ga. Jan. 13, 2020) ...................................................... 17

*In re Indep. Energy Holdings Pub. Ltd. Co. Sec. Litig.,*
 302 F. Supp. 2d 180 (S.D.N.Y. 2003) ...................................................... 18

*In re Lloyd's Am. Trust Fund Litig.,*
 2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002) ...................................................... 16

*In re Prudential Sec. Inc. Ltd. P'ship Litig.,*
 912 F. Supp. 97 (S.D.N.Y. 1996) ...................................................... 10

*In re Ramp Corp. Sec. Litig.,*
 2008 U.S. Dist. LEXIS 213 (S.D.N.Y. Jan. 3, 2008) ...................................................... 6

*In re Sumitomo Copper Litig.,*
 74 F.Supp.2d 393 (S.D.N.Y. 1999) ...................................................... 7, 14

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.,*
 746 Fed. Appx. 655 (9th Cir. 2018) ...................................................... 17

*Johnson v. Brennan,*
 2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011) ................................................ *passim*

*Knapp v. Badger Techs., Inc.,*
 2015 U.S. Dist. LEXIS 77186 (W.D.N.Y. June 15, 2015) ...................................................... 13

*Maley v. Del Global Techs. Corp.,*
 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...................................................... 5

*Maloney v. Watermark Contractors, Inc.,*
 2022 U.S. Dist. LEXIS 93269 (S.D.N.Y. May 24, 2022) ...................................................... 13

*McMahon v. Olivier Cheng Catering & Events, LLC,*
 2010 U.S. Dist. LEXIS 18913 (S.D.N.Y. Mar. 2, 2010) ...................................................... 13

*Parker v. Jekyll & Hyde Entm't Holdings, LLC,*
 2010 U.S. Dist. LEXIS 12762 (S.D.N.Y. Feb. 9, 2010) ...................................................... 19

*Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund,*
 281 F. Supp. 3d 833 (N.D. Cal. 2017) ...................................................... 17

*Reyes v. City of Rye,*
 2017 U.S. Dist. LEXIS 103096 (S.D.N.Y. June 30, 2017) ...................................................... 13

*Sewell* v. *Bovis Lend Lease LMB, Inc.,*
    2012 U.S. Dist. LEXIS 53556 (S.D.N.Y. Apr. 20, 2012).................................................... 7, 8, 16

*Shiyang Huang v. Equifax Inc.*
    999 F.3d 1247 (11th Cir. 2021) .......................................................................................... 17

*Stefaniak v. HSBC Bank USA, NA,*
    2008 U.S. Dist. LEXIS 53872 (W.D.N.Y. June 28, 2008) ...................................................... 18

*Stillman v. Staples, Inc.,*
    2009 U.S. Dist. LEXIS 42247 (D.N.J. May 11, 2009) .............................................................. 12

*Tiro v. Pub. House Invs., LLC,*
    2013 U.S. Dist. LEXIS 129258 (S.D.N.Y. Sept. 10, 2013) ................................................... 5, 12

*Wal-Mart Stores, Inc. v. Visa USA Inc.,* 396 F.3d
    396 F.3d 96 (2d Cir. 2005)..................................................................................................... 6

*Yuzary v. HSBC Bank USA, N.A.,*
    2013 U.S. Dist. LEXIS 144327 (S.D.N.Y. Oct. 2, 2013) ........................................................ 16

*Zeltser v. Merrill Lynch & Co.,*
    2014 U.S. Dist. LEXIS 135635 (S.D.N.Y. Sept. 23, 2014) ...................................................... 15

## Codes, Statutes, and Other Regulations

Fed. R. Civ. P. 23 ................................................................................................. *passim*

29 U.S.C. § 216 .............................................................................................................. 10

## INTRODUCTION

Emanuele Stevens, Moises Madriz, Rodney Ulloa, Ricardo Vidaud, Jorge Mendoza, Seth Marshall, Matthew White, Tyrell King, Kennetha Mitchell, Donedward White, Jamal Winger, Allison Poulson, Robney Irving-Millentree, Tracy Ellis, Thomas Parrish, Devin Drobsch, Joshua Smith, William Muller, Jamaar Codrington, and Jacob Tschudy (together, "Plaintiffs") seek final approval of the proposed collective and class settlement ("Settlement") reached between Plaintiffs and PepsiCo, Inc. ("PepsiCo"), New Tiger LLC, and their various respective divisions, subsidiaries and affiliates, which include Bottling Group, LLC, Cb Manufacturing Company, Inc., FL Transportations, Inc., Frito-Lay, Inc., Golden Grain, Inc., Grayhawk Leasing, LLC, Juice Transport, Inc., New Bern Transport Corporation, Pepsi Northwest Beverages, LLC, Pepsi-Cola Sales & Distribution, Inc., Pepsi-Cola Beverage Sales, Llc, Pepsico Sales, Inc., Quaker Manufacturing, LLC, Rolling Frito-Lay Sales, LP, Svc Manufacturing, Inc., Tropicana Manufacturing Co., Tropicana Product Sales, Inc., and Tropicana Services, Inc. (collectively, "Defendants") (together, with Plaintiffs, the "Parties"), on behalf of all persons who were employed by Defendants in the United States, and who were not timely or fully paid by Defendants for all hours worked during the seventeen pay periods between December 5, 2021 and April 8, 2022 due to Defendants' payroll provider, the Ultimate Kronos Group ("Kronos") experiencing a cybersecurity incident on or about December 5, 2021.

The Court preliminarily approved the Settlement on December 2, 2022, preliminarily finding it to be adequate, fair, and reasonable, and sufficient to permit notice of the Settlement to go out and to thereby gauge the reaction of the Collective and Class (ECF No. 73). As described in Plaintiffs' Memorandum of Law in Support of Preliminary Approval of Class and Collective Action Settlement ("Pls. Mem.") (ECF No. 58), the Settlement certainly resolves a *bona fide* dispute, is the result of arms-length negotiations facilitated by an experienced mediator, and provides significant benefits to

the members of the Collective/Class, including (1) approximately $23,896,550 representing the net unpaid compensation owed due to the Kronos Outage and which was paid on May 6, 2022 (the "May 6 Payment"); (2) $12,750,000 in liquidated damages and penalties over and above the regular and overtime pay they received through the May 6 payment, (3) Defendants' agreement not to seek to recoup approximately $60 million in overpayments Defendants paid to the members of the Collective/Class during the Kronos Outage; (4) assistance by Plaintiffs' counsel in resolving any disputes between a Collective/Class member and their Defendant employer with regard to the May 6 Payment; and (5) Defendants' payment of all Settlement Notice and Administration costs. *See, e.g.,* Pls. Mem. (ECF Nos. 58) at 2, 6-9.

These benefits represent a particularly good outcome in light of the many potential defenses Defendants possess, which, if asserted, would likely have resulted in years of hard-fought litigation. For instance, Defendants could argue that they themselves were victims of the cyberattack that shut down Kronos' operations and therefore did not knowingly or willfully violate any laws, and hence should not owe any liquidated damages or penalties.  Moreover, rather than attempting to avoid paying employees overtime, Defendants could argue to the Court or to a jury that, when the Kronos problem arose, they acted quickly and in good faith, and in fact *overpaid* their employees by approximately $60 million.

The Settlement, Plaintiffs believe, in light of these and other considerations relative to the defenses that could be asserted, represents an exceedingly excellent outcome.  And now that the nearly 70,000 members of the Collective/Class have received notice of the Settlement, the Court's preliminary determination that the Settlement is fair and should be approved has been confirmed. From the 70,000 (or, more precisely, 69,809) notices that went out, there was not a single objection to

any part of the Settlement whatsoever, and only eight opt-outs.[1]  In an age where objections to Settlements seem routine, particularly given the presence of so-called "professional objectors," for a Settlement class consisting of tens of thousands of individuals, from across the United States and who work for multiple divisions of a major company, constitutes a resounding confirmation of support.  In short, the Collective Class agrees that the Settlement should be approved.[2]

Accordingly, Plaintiffs now respectfully request that the Court: (1) grant final approval of the Settlement set forth in the Settlement Agreement ("Settlement Agreement") attached as Exhibit A to the Declaration of Seth R. Lesser in Support of Plaintiffs' Motion for Preliminary Approval of Class and Collective Action Settlement ("Lesser Decl. I") (ECF No. 57) as adequate, fair and reasonable; (2) grant final certification of the proposed settlement classes; (3) grant approval of attorney's fees of $7,329,310, and costs and expenses of $38,328.84; and (4) grant approval of the service payments to the named Plaintiffs in the amount of $5,000.00 each.

## I.    RELEVANT PROCEDURAL HISTORY

Plaintiffs previously recited the history of this case, including the terms of the Settlement and the form and content of the notice (*see, e.g.*, Pls. Mem. (ECF No. 58) at 3-15; Lesser Decl. I (ECF No. 57) at ¶¶ 3-21), and incorporate those documents by reference herein.

Subsequent to the Court granting Plaintiffs' motion for preliminary approval of the Settlement, notice of the Settlement was sent to members of the Collective/Class by the claims administrator, Angeion, as ordered by the Court. Chumley Decl. at ¶¶ 7-11. Angeion caused email notice to be delivered to 60,954 members of the Collective/Class, and delivery of notice by US

---

[1] *See* Declaration of Ryan Chumley, ("Chumley Decl.") Senior Project Manager for Settlement Administrator Angeion Group, LLC ("Angeion") at ¶ 15, filed concurrently.

[2] To the extent that, since the Settlement notice went out, the undersigned's firm and Class Counsel have heard from Settlement Collective and Class members, the calls have been positive and in support.  Lesser Dec. II at ¶ 4.

Mail to an additional 12,647 members for whom no valid email address was known. *Id.* at 8-9.

Angeion also established a case specific website and telephone hotline to answer questions. *Id.* at

12-14. Collective/Class members had a deadline of February 6, 2023 to request exclusion from the

Settlement. As of March 10, 2021, Angeion has received a total of eight requests for exclusion

(including one from a person who was not on the class list). *Id.* at 15. February 6, 2023 was also

the deadline for members of the Collective/Class to file any objections to the Settlement. *Id.* at 16.

None were received. *Id.*[3]

## II.    FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

### A.    The Settlement Is Fair, Reasonable, and Adequate

The Settlement satisfies the Second Circuit standards for final approval. Specifically, in *City

of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), the Court of Appeals set forth the now-

established analytical framework for evaluating the substantive fairness of a class action settlement.

The factors for determining whether a proposed settlement should be approved include: (1) the

complexity, expense and likely duration of the litigation; (2) the reaction of the class to the

settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of

establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class

action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the

range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the

range of reasonableness of the settlement fund to a possible recovery in light of all the attendant

risks of litigation. *Id.* at 462-63.

Plaintiffs previously reviewed each of the *Grinnell* factors. *See* Pls. Mem. (ECF No. 58) at

---

[3] Class Counsel received via email, one individual who stated he had an objection. Class Counsel reached out to the individual, answered his questions, and addressed his concerns. After that discussion the objector agreed that he was satisfied with the Settlement and had no objection it. Declaration of Seth R. Lesser in Support of Final Approval of Class and Collective Action Settlement ("Lesser Decl. II") at ¶ 4.

16-25. Of these factors, only the second factor – the reaction of the class to the proposed settlement – could not be assessed at the preliminary approval stage. Each of the other factors, pertaining to the complexity of the litigation, the knowledge of the Parties in negotiating settlement, the potential risks in litigation, the time and expense of continued litigation, and the range of potential outcomes, all favored approval of the Settlement as fair and adequate – as confirmed by the Court's grant of preliminary approval.

Now, the second *Grinnell* factor – reaction of the class – also favors final approval. "It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 362-63 (S.D.N.Y. 2002). Here, no Class member objected to the settlement, and only 8 individuals out of nearly 70,000 requested exclusion from the settlement. Chumley Decl. at ¶¶ 15-16. The settlement was thus approved by over 99.99% of the settlement participants. This positive response to the settlement strongly favors judicial approval. *See, e.g., Grottano v. City of N.Y.,* 2021 U.S. Dist. LEXIS 227995, *17-18 (S.D.N.Y. Nov. 29, 2021) ("Where relatively few class members opt-out of or object to the settlement, the lack of opposition supports court approval of the settlement.") (*quoting Tiro v. Pub. House Invs., LLC,* 2013 U.S. Dist. LEXIS 129258 (S.D.N.Y. Sept. 10, 2013)); *Dupler v. Costco Wholesale Corp.,* 705 F. Supp. 2d 231, 239-240 (E.D.N.Y. 2010) (with 127 opt outs and 24 objections in class of over 11 million, the court stated, "[g]iven the relatively small number of class members who opted out or objected to the Settlement, the Court finds that the reaction of the class has been overwhelmingly positive, which strongly weighs in favor of Settlement approval.")

In addition to satisfying each of the *Grinnell* factors, the Settlement satisfies the Second Circuit's guidance with regard to settlement of FLSA collective actions, as described in *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-07 (2d Cir. 2015). The Settlement contains no

5

restrictive confidentiality provisions that would conflict with the FLSA's remedial purposes, the proposed release is narrowly tailored to the FLSA claims alleged here, and the attorneys' fees, which equate to one-fifth of the common fund amount, are fair and consistent with (indeed, lower than the 1/3rd contingency in) the retainer agreements between Plaintiffs and counsel. *See* Lesser Decl. II at ¶ 5 n.1.

All relevant factors to be considered by the Court favor approval of the Settlement. Plaintiffs respectfully request that their motion for final approval be granted.

## III.    PLAINTIFFS' REQUESTS FOR ATTORNEYS' FEES, COSTS, AND SERVICE PAYMENTS ARE REASONABLE AND SHOULD BE APPROVED

### A.    The Percentage Method is the Preferred Method in the Second Circuit for Awarding Attorneys' Fees in a Common Fund Case

In class action wage lawsuits, "public policy favors [a common fund] award" of attorneys' fees. *Bryant v. Potbelly Sandwich Works, LLC*, 2020 U.S. Dist. LEXIS 21900 (S.D.N.Y. Feb. 4, 2020). Although there are two ways to compensate attorneys for successful prosecution of statutory claims (the percentage of the fund method and the lodestar method), in common fund cases like this courts in this Circuit prefer to award fees as a percentage of the fund. *Dupler*, 705 F. Supp. 2d at 242 (*quoting Wal-Mart Stores, Inc. v. Visa USA Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) ("The trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for efficient prosecution and early resolution of litigation'")). There are several reasons for this. First, the percentage method "directly aligns the interests of the class and its counsel" because it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made. *Wal-Mart Stores, Inc.*, 396 F.3d at 121 (internal quotation marks omitted); *see also Asare v. Change Grp. of N.Y., Inc.*, 2013 U.S. Dist. LEXIS 165935, at *43-45 (S.D.N.Y. Nov. 15, 2013); *In re Ramp Corp. Sec.*

*Litig.*, 2008 U.S. Dist. LEXIS 213, at *7 n.2 (S.D.N.Y. Jan. 3, 2008). The lodestar method, by contrast, "create[s] an unanticipated disincentive to early settlements, [and] tempt[s] lawyers to run up their hours...." *Wal-Mart Stores,* 396 F.3d at 121

The percentage method is also preferred because it "spares the court and the parties the cumbersome, enervating, and often surrealistic process of lodestar computation." *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184 (W.D.N.Y. 2011) (quotation omitted). The "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyes review of line-item fee audits." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 438-49 (2d Cir. 2000). The percentage method, therefore, preserves judicial resources, and frees the Court from engaging in meticulous review of billing records.

Finally, the percentage method "mimics the compensation system actually used by individual clients to compensate their attorneys." *In re Sumitomo Copper Litig.*, 74 F.Supp.2d 393, 397 (S.D.N.Y. 1999); *see also Sewell v. Bovis Lend Lease LMB, Inc.*, 2012 U.S. Dist. LEXIS 53556, at *29 (S.D.N.Y. Apr. 20, 2012)("[The percentage] method is similar to private practice where counsel operates on a contingency fee, negotiating a reasonable percentage of any fee ultimately awarded").

## B.    Plaintiff's Request for Attorneys' Fees Is Reasonable

Class Counsel seek an award of attorneys' fees for $7,329,310, which represents one-fifth (20%) of the $36,646,550 common settlement fund amount. Lesser Decl. II at ¶ 5. Class Counsel's request for one-fifth, rather than one-third, of the common fund amount represents a significant discount from typical practice and, as explained below, illustrates the reasonableness of the request.

In *Goldberger*, the Second Circuit articulated six factors for courts to consider in determining the reasonableness of fee applications: (1) the time and labor expended by counsel;

(2) the magnitude and complexities of the litigation; (3) the risk of litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement, and (6) public policy considerations.  The *Goldberger* factors weigh in favor of approving the fee request.

>    1.    Class Counsel Have Expended Significant Time and Labor, and the Settlement Requires Class Counsel to Expend Significant Time and Labor Post-Settlement

Class Counsel believe that they attained an exemplary Settlement, and are pleased to have attained an agreement that forestalled years of complex and difficult litigation. However, even to attain that early resolution, Class Counsel, across the firms who commenced and brought cases and who ultimately all joined together in supporting the Settlement, expended significant time and labor, totaling 2,691.94 hours of professional time for an aggregate lodestar of $1,926,066.50.  Lesser Decl. II at ¶ 5.  The hours are certainly reasonable for the effort that went into the filing of the numerous cases, including, among other things, the literally securing, for example, of well over 100 opt-ins for filing into this Court alone in the lead *Stevens* case; the filing of the numerous cases consolidated here; the review of massive payroll records and information from Defendants as to the underpayment amounts (including reviewing that information with numerous clients); the negotiation of a substantial settlement in an expedited manner, and addressing its finalization, the confirmatory discovery that was taken, the continual calls from clients relating to their claims and the Settlement in the last several months. The hours were compiled from time records duly maintained by each attorney, paralegal, and support staff.  *Id.*; *see also* Declaration of Ryan A. Winters ("Winters Decl.") (Lesser Decl. Ex. B), at ¶ 9; Declaration of Matthew S. Parmet ("Parmet Decl.") (Lesser Decl. Ex. C), at ¶ 42; Declaration of Michael D. Lore ("Lore Decl.") (Lesser Decl. Ex. D), at ¶ 5; Declaration of Andrew R. Frisch ("Frisch Decl.") (Lesser Decl. Ex. E) at ¶ 22; Declaration of Michael Morrison ("Morrison Decl.") (Lesser Decl. Ex. F), at ¶ 5; and Declaration of Dimitros Korovilas ("Korovilas Decl.") (Lesser

8

Decl. Ex. G) at ¶ 4.[4]

Class Counsel communicated regularly to ensure no unnecessary time was incurred, nor duplication of effort. As noted above, and in summary, the activities conducted by Class Counsel included, among others, interviews with dozens of PepsiCo. employees about events relevant to the case; drafting and filing complaints in multiple related lawsuits; researching state specific laws relative to the claims asserted; preparing affirmative discovery requests; preparing a FLSA Section 16(b) motion for notice and conditional certification; reviewing production documents from Defendants; auditing and analyzing Defendants' extensive pay records and their determination of outstanding pay due to the Collective/Class, including discussing same with numerous class members; creating damages models; attending meet-and-confers with Defendants' counsel; preparing for and attending two full-day mediation sessions in negotiating the Settlement, and then preparing the approval documents; conducting confirmatory discovery; and handling hundreds of calls from class member clients with inquiries about the case and the Settlement. *See* Lesser Decl. II at ¶ 6; Parmet Decl. at ¶ 39; Lore Decl. at ¶ 3; Frisch Decl. at ¶ 20; Winters Decl. at ¶ 7; Morrison Decl. at ¶ 3; Korovilas Decl. at ¶ 3.

Furthermore, it is typical that Class Counsel will also have to perform additional work to effectuate the settlement's administration. *See, e.g., Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 482 (S.D.N.Y. 2013) ("Class Counsel is often called upon to perform work after the final approval

---

[4] The law firm of Michael D. Lore, P.C. is co-counsel for plaintiffs in thirteen lawsuits consolidated with this suit. *See* Lore Decl. at ¶2. The law firms of Alexander Morrison & Fehr ("AMF") and Wucetich & Korovilas LLP ("W&K") are co-counsel for plaintiffs in *Muller, et al. v. PepsiCo Inc., et al.,* Case No. CGC-22-597909, filed on January 28, 2022 in the Superior Court for the County of San Francisco, State of California. *See* Morrison Decl. at ¶ 3; Korovilas Decl. at ¶ 2. As the Court may recall from last summer, AMF and W&K raised some questions about the Settlement following Plaintiffs' filing of their motion for preliminary approval. After meeting with them and discussing their concerns, as well as our explaining in greater detail how the Settlement worked, in September of last year, AMF and W&K agreed that the Settlement was, in fact, an excellent one and agreed to support it. *See* ECF No. 66 (relaying to the Court the agreement of counsel). The declarations of Messrs. Lore, Morrison, and Korovilas are, accordingly, included herein and they are proceeding as co-counsel supporting this motion.

hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund.").  Experience has shown that administering wage class settlements of this nature and size requires ongoing commitment, for example, as members of the Settlement Classes have already had questions regarding the Settlement. Based upon experience, such calls will continue through and beyond final approval as members of the Settlement Classes report lost checks and request new ones, raise questions about tax consequences and generally call for advice. Lesser Decl. II at ¶ 7. Here, this time can be expected to exceed the norm inasmuch as part of the Settlement, Defendants will continue to administer a program which allows members of the Collective/Class to challenge the accuracy of any of Defendants' determinations as to pay owed to Collective/Class members during the Kronos Outage period (the "Reconciliation Process"); *see* Settlement Agreement, Sec. 6. As part of the Reconciliation Process, Class Counsel has offered to assist any members of the Collective/Class in making their claims. Considering the size of the Collective/Class, Class Counsel anticipates a significant investment of time and resources to assist the Collective/Class, and would reasonably anticipate several hundred hours of additional time post-settlement, which will otherwise go uncompensated if the requested fee request is not granted. Lesser Decl. II at ¶ 7.  Indeed, throughout the last several months, nearly every firm in this case has handled numerous calls from clients and/or Class members with questions about their claims or the Settlement.  *Id.*

### 2.     The Magnitude and Complexity of the Litigation

The size and difficulty of the issues in a case are significant factors to be considered in making a fee award. *See Goldberger*, 209 F.3d at 50; *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 912 F. Supp. 97, 100-01 (S.D.N.Y. 1996). "Among FLSA cases, the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class

action pursuant to Federal Rule of Civil Procedure 23 in the same action as the FLSA 'opt in' collective action pursuant to 29 U.S.C. § 216(b)." *Johnson v. Brennan*, 2011 U.S. Dist. LEXIS 105775, at *49 (S.D.N.Y. Sept. 16, 2011). "Because the same set of operative facts is being applied and analyzed under both statutory frameworks, justice is served and consistency and efficiency are achieved by having the litigation in one forum." *Id.*

Here, the litigation is also a complex hybrid of FLSA claims and state law claims asserted pursuant to Rule 23. Furthermore, the Kronos Outage was nationwide, and so the early litigation in this case proceeded against multiple divisions and subsidiaries of Defendants across multiple states and jurisdictions. Negotiating a universal settlement in those circumstances required significant effort and expertise and negotiation. This factor supports awarding the requested fees.

### 3.    The Risk of Litigation

As discussed when analyzing the *Grinnell* factors (Pls. Mem. (ECF No. 58) at 22-23), Plaintiffs face considerable risk in continuing to litigate these cases, and it is axiomatic that even with the most vigorous efforts, success is never guaranteed as to the challenges of proving liability, obtaining and retaining a class, and maximizing damages in the face of such risks as differing damage methodologies and proving "wilfulness" under the FLSA or congruent state laws.

Moreover, Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk. Lesser Decl. II at 6. Class and collective wage and hour cases of this type are, by their nature, complicated, time-consuming, and subject to risk. District Judge Jones of the Middle District of Pennsylvania captured this point in approving a FLSA case settlement in the undersigned represented the class, writing, "[i]t is undisputed that copious risks abound with respect to maintaining this [FLSA] action and establishing liability." *Craig v. Rite Aid Corp.*, No. 08 Civ. 2317, 2013 WL 84928, at *9 (M.D. Pa. Jan. 7, 2013). These words apply with full force here. And

11

due to the contingent nature of the fee arrangement, lawyers make this investment with the real possibility of an unsuccessful outcome – and no fee. This risk is illustrated by Class Counsel's own experience in litigating other cases that resulted in either no recovery (and no fee award) or a substantially lower recovery (and lower fees) than anticipated. *Id.* This factor supports an award of the requested fees.

        4.      **The Class Members are Represented by Class Counsel with Significant Experience in Wage and Hour Litigation**

Plaintiff submits that the quality of lawyering has been high on both sides. "To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the case." *Tiro v. Pub. House Invs., LLC*, 2013 U.S. Dist. LEXIS 129258, at *42 (S.D.N.Y. Sept. 10, 2013). The Class Members are represented by experienced counsel who have invested substantial time and resources into the prosecution of this litigation. *See* Lesser Decl. II at 9, 14; Lesser Decl. I (ECF No. 57) at Exhibit A (KL Firm Resume); Parmet Decl. at ¶¶ 4-11 and Ex. 1; Lore Decl. at ¶¶ 6-7; Frisch Decl. at ¶¶ 23-30;; Winters Decl. at ¶¶ 4-5; Korovilas Decl. at ¶¶ 8-9. Class Counsel have served as class counsel in numerous class and collective actions, including many significant wage and hour overtime cases involving retail assistant managers, and have tried and successfully resolved many such cases. *Id.* [5]

Defendants' counsel, both in-house and private practitioners, have been equally professional and competent. "The quality of opposing counsel is also important in evaluating the quality of Class Counsel's work," and Defendant's counsel vigorously defended PepsiCo. *Tiro*, 2013 U.S. Dist. LEXIS 129258, at *42-43 (*quoting In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467

---

[5] In particular, Class Counsel is well-known for being successful in taking FLSA cases all the to trial. KL, for instance, was lead counsel in six-week assistant manager misclassification trial in *Stillman v. Staples, Inc.*, 2009 U.S. Dist. LEXIS 42247 (D.N.J. May 11, 2009), resulting in the largest FLSA/state wage and hour settlement in the history of the District of New Jersey.

(S.D.N.Y. 2004)); Lesser Decl. II at ¶ 13. These factors weighs in favor of approving the requested

fees.

### 5.    Class Counsels' Fee Request is Lower Than What This Circuit Typically Awards

In cases like this, Class Counsel typically request – and are awarded – one-third of the

common fund. *See* Lesser Decl. ¶ 5. A request for a one-third fee is "consistent with the norms of

class litigation in this circuit." *McMahon v. Olivier Cheng Catering & Events, LLC*, 2010 U.S. Dist.

LEXIS 18913, at *20 (S.D.N.Y. Mar. 2, 2010); *see also Reyes v. City of Rye*, 2017 U.S. Dist. LEXIS

103096 (S.D.N.Y. June 30, 2017) (Roman, J.) (same); *Maloney v. Watermark Contractors, Inc.*,

2022 U.S. Dist. LEXIS 93269 (S.D.N.Y. May 24, 2022 )(Roman, J. ) (final approval of settlement

awarding one-third fees). "In class settlement funds like this one, a one-third award of the settlement

proceeds [for attorneys' fees] is considered typical and reasonable . . . because "[t]he attorneys' fees

requested were entirely contingent upon success.  Class Counsel risked time and effort and advanced

costs and expenses, with no ultimate guarantee of compensation." *Knapp v. Badger Techs., Inc.*,

2015 U.S. Dist. LEXIS 77186, at *15 (W.D.N.Y. June 15, 2015) (quotations omitted).  Class

Counsel's request here for only one-fifth is a significant reduction and further demonstrates the

reasonableness of Plaintiffs' request. Lesser Decl. at ¶ 5.  And Class Counsel's time and effort was on

a contingent basis, with no guarantee of payment (in whole or part). Lesser Decl. II at 6.

By their own retention letters, Class Counsel would be within their rights to request a

typical one-third fee. *See* Lesser Decl. II at ¶ 5 n.1.  However, in order to ensure early resolution

of the case, and to ensure that the Collective/Class members receive quick payment, Class Counsel

believes that requesting a smaller percentage of the common fund is equitable under the

circumstances. Lesser Decl. II at 5.

Furthermore, by settling early, Class Counsel submits that they did the right thing by their

clients. Certainly, there was an opportunity for Class Counsel to engage in significant more litigation practice prior to any settlement, including filing a motion for notice and conditional certification (and one was, in fact, prepared), or additional discovery well beyond the confirmatory discovery that was taken. Instead, Class Counsel saw the opportunity for actual and constructive negotiations, resulting in this Settlement. Counsel should not be penalized for their good faith effort by seeing a reduction in reasonably requested fees, particularly where, as here, the Settlement outcome is substantial. *See, e.g., Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) (early resolution should be encouraged, and "should not result in penalizing plaintiffs' counsel for achieving an early settlement, particularly where, as here, the settlement amount is substantial."); *Arrington v. Optimum Healthcare IT, LLC*, No. 17-3950, 2018 U.S. Dist. LEXIS 186192, *30 (E.D. Pa. Oct. 31, 2018) ("class counsel undertook significant risk to achieve a substantial settlement amount, and [they] should not be penalized for settling the case early in the litigation.").

### 6.  Public Policy Considerations Favor The Fee Requested

Public policy considerations weigh in favor of granting Counsel's requested fees. In rendering attorneys' fee awards, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d at 399. Indeed, the Second Circuit recently emphasized in *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 605 (2d Cir. 2020), how "[f]ee awards in wage and hour cases should 'encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.'" The Court likened FLSA fees to actions in the public interest, like civil rights litigation, where the public interest goals are "'perhaps most meaningfully served by the day-to-day private enforcement of these rights, which secures compliance and deters future

violation,'" which is why "'Congress meant reasonable attorney's fees to be available to the private attorneys general who enforce the law, not only to those whose cases make new law.'"  *Id.* at 605 (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 426 (2d Cir. 1999)); *see also Fisher*, 948 F.3d at 600-605 (addressing these points at length); *see also Johnson*, 2011 U.S. Dist. LEXIS 105775, at *56 ("[a]dequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of those statutes.").

C.    **The Lodestar Cross Check Further Supports an Award to Class Counsel of One-Third of the Settlement Fund**

The trend in the Second Circuit has been to apply the percentage method, and then loosely use the lodestar method as a baseline or "cross check" of the reasonableness of the requested fee. *Goldberger,* 209 F.3d at 50; *Tiro,* 2013 U.S. Dist. LEXIS 129258, at *46 (citation omitted).  As part of the cross check, the lodestar is determined by multiplying the number of hours reasonably expended on a client's case by a reasonable hourly billing rate for such services.  *See Johnson,* 2011 U.S. Dist. LEXIS 105775, at *58 (citation omitted).  "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court.  Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Goldberger v. Integrated Res.*, 209 F.3d 43, 50 (2d Cir. 2000).

Class Counsel's fee request for one-fifth of the settlement amount, or $7,329,310, is approximately 3.8 times their lodestar of $1,926,066.50. Lesser Decl. II at ¶ 5.  Class Counsel's request is reasonable: not only did counsel secure an excellent result, with no objections, but a multiplier of 3.8 is squarely within the range typically approved in class and, specifically, in FLSA settlements. Courts in this Circuit regularly award lodestar multipliers from two to six times lodestar, with some courts approving fee requests that are "up to eight times the lodestar, and in some cases, even higher...." *Beckman*, 293 F.R.D. at 477 (fee of 6.3 times lodestar in overtime class action

approved). *See also, e.g., Wal-Mart*, 396 F.3d at 123 (leading Second Circuit decision on class settlements, finding 3.5 multiplier reasonable, citing cases involving multipliers between 1.35 and 4.5); *Zeltser v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 135635, at *22-23 (S.D.N.Y. Sept. 23, 2014) (multiplier of 5.1 "falls within the range granted by courts"); *Yuzary v. HSBC Bank USA, N.A.*, 2013 U.S. Dist. LEXIS 144327, at *29-30 (S.D.N.Y. Oct. 2, 2013) (awarding multiplier of 7.6 in wage and hour misclassification class action); *Sewell*, 2012 U.S. Dist. LEXIS 53556, at *18, at *38 ("Courts commonly award lodestar multipliers between two and six."); *In re Lloyd's Am. Trust Fund Litig.*, 2002 U.S. Dist. LEXIS 22663, at *81 (S.D.N.Y. Nov. 26, 2002) (noting that a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *Maley*, 186 F. Supp. 2d at 371 (S.D.N.Y. 2002) (concluding that "modest multiplier" of 4.65 was "fair and reasonable"). A 3.8 times multiplier is well within the range of reasonability, particularly for a case in which the Class Members' reaction has been so positive, and not one Class Member objected to the fee request explained in the Notice. In its recent *Fisher* decision, the Second Circuit made it clear how **FLSA** cases can sometimes have attorneys' fees that exceed the value of the claims, and in light of that consideration, as well as those otherwise set forth by the decisions in the preceding paragraph, we would respectfully submit that a 3.8 multiplier is, indeed, not just reasonable but, given the results here, exceedingly modest.

Furthermore, as discussed, the multiplier that Class Counsel seek will likely diminish over time as they spend additional time on this litigation in connection with implementing and monitoring the settlement and, more significantly, assisting members of the Collective/Class with the Reconciliation Process. *See Sewell*, 2012 U.S. Dist. LEXIS 53556, at *38. As such, the request fee is "even more reasonable than it appears at first glance." *Beckman,* 293 F.R.D. at 482; *see also Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 U.S. Dist. LEXIS 47036, at *29 (S.D.N.Y. May 11, 2010) (holding that fee request was supported by fact that it

16

would compensate class counsel not only "for time and effort already expended, but also "for time that they will be required to spend administering the settlement going forward").

Class Counsel reasonably estimate potentially hundreds of hours of services provided post-settlement. Including that additional lodestar would lower the requested multiplier. And that time should be properly considered; indeed, "[e]xcluding such time . . . would misapply the lodestar methodology and needlessly penalize class counsel." *In re Equifax Inc. Customer Data Security Breach Litig.*, No. 1:17-md-2800-TWT,  2020 U.S. Dist. LEXIS 7841, at *264 (N.D. Ga. Jan. 13, 2020), *aff'd in relevant part and reversed in part on other grounds, Shiyang Huang v. Equifax Inc. (In re Equifax Customer Data Sec. Breach Litig.)*, 999 F.3d 1247 (11th Cir. 2021) (affirming fee award).[6]

In sum, the fee request here should, we respectfully submit, be approved.

## D.    The Court Should Approve Payment of Costs and the Settlement Expenses from the Settlement Fund

Class Counsel also seeks reimbursement for litigation expenses of $39,420.11 from the settlement fund.[7] Lesser Decl. II at ¶ 11. "Attorneys may be compensated for reasonable out-of-

---

[6] *See also, e.g., In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 746 Fed. Appx. 655, 659 (9th Cir. 2018) ("[t]he district court did not err in including projected time in its lodestar cross-check; the court reasonably concluded that class counsel would, among other things, defend against appeals and assist in implementing the settlement"); *Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 281 F. Supp. 3d 833, 856 (N.D. Cal. 2017) (including, over the defendants' objection, "125 anticipated future hours" to be spent on "communicating with the settlement administrator and responding to inquiries from class members" in the lodestar calculation); *Corzine v. Whirlpool Corp.*, 2019 U.S. Dist. LEXIS 223341, at *31-32 (N.D. Cal. Dec. 31, 2019) (including "an estimate of 250 hours for future work to complete Settlement's claims process through 2026" in the lodestar calculation); *In re Equifax Inc. Customer Data Security Breach Litig.*, No. 1:17-md-2800-TWT, 2020 U.S. Dist. LEXIS 7841, at *242-43 (N.D. Ga. Jan. 13, 2020) (including in the lodestar calculation, over a class member's objection, class counsel's estimate of an anticipated 10,000 hours to be spent in the future to implement and administer a class action settlement).

[7] Typically, Class Counsel would also request payment of notice and settlement costs to the Settlement Administrator. But here, in another benefit to the Collective/Class, Defendants as part of the Settlement have agreed to pay those costs directly, and such payment will therefore not reduce the amount available to the Collective/Class.

pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients." *In re Indep. Energy Holdings Pub. Ltd. Co. Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (quotation omitted). As stated in the Lesser Declaration II (at ¶ 11), Class Counsel's expenses are monies they invested at their own expense to meet the costs of the litigation, and the total reported is less than the total expenses that Class Counsel will actually incur through and after the Final Approval hearing, as there are usually costs incurred in helping class and collective members post-settlement. The costs were reasonable and incurred in the prosecution of this matter.  They include expenses such as filing fees, postage, on-line research, and mediation. *Id.* The expenses were incurred to benefit the Class Members, and Class Counsel may be reimbursed for them. *See, e.g., Stefaniak v. HSBC Bank USA, NA,* 2008 U.S. Dist. LEXIS 53872, at *11 (W.D.N.Y. June 28, 2008); *Chambery v. Tuxedo Junction Inc.*, 2014 U.S. Dist. LEXIS 101939, at *26-27 (W.D.N.Y. July 25, 2014).

### E.    Service Payments to Named Plaintiff Should Be Approved

Courts routinely approve service payments in wage and hour class and collective actions. Incentive payments are especially appropriate in wage and hour cases. Each of these Plaintiffs here faced the risk of retaliation within their industry—or at least the fear of such risk—by putting their name out there. As the Court of Appeals explained in *Shahriar v. Smith & Wollensky Rest. Grp., Inc.,* 659 F.3d 234, 244 (2d Cir. 2011), "an employee fearful of retaliation or of being 'blackballed' in his or her industry may choose not to assert his or her FLSA rights."  *See also, e.g., Frank v. Eastman Kodak, Co.,* 228 F.R.D. 174, 187 (W.D.N.Y. 2005) ("[S]uch awards are particularly appropriate in the employment context. In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-

workers."). *See also Fikes Wholesale, Inc., v. HSBC Bank USA, N.A.*, No. 20-339-cv(L), slip op. at 36 (2d Cir. March 15, 2023) (affirming propriety of service awards within this Circuit).

Without opposition from any class or collective member, Plaintiff seeks a service payment of $5,000 to each Named Plaintiff. Specifically, service payments should be made to: Emanuele Stevens, Moises Madriz, Rodney Ulloa, Ricardo Vidaud, Jorge Mendoza, Seth Marshall, Matthew White, Tyrell King, Kennetha Mitchell, Donedward White, Jamal Winger, Allison Poulson, Robney Irving-Millentree, Tracy Ellis, Thomas Parrish, Devin Drobsch, Joshua Smith, William Muller, Jamaar Codrington, and Jacob Tschudy. Lesser Decl. II at 14. The request is reasonable given the contributions Plaintiffs have made to advance the prosecution and resolution of this case: aiding Class Counsel's investigation and prosecution of the claims, providing information and documents to Class Counsel, and discussing the strategy, prosecution, and settlement of the cases. *Id.* Names Plaintiffs' efforts – which expose them to risk – substantially aided the prosecution of this case on behalf of the Class Members and warrant recognition. *Id.* at 15.

The requested service awards amount to well less than 1% of the total recovery, which is a reasonable, if not a *de minimus,* percentage. *See, e.g., Parker v. Jekyll & Hyde Entm't Holdings, LLC*, 2010 U.S. Dist. LEXIS 12762, at *6 (S.D.N.Y. Feb. 9, 2010) (finding that service awards totaling 11% of the total recovery are reasonable "given the value of the representatives' participation and the likelihood that class members who submit claims will still receive significant financial awards"). The service award being requested here is well within the range of typical awards in similar cases.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court grant Plaintiff's Motion for Final Approval of Settlement, for Award of Attorneys' Fees and Expenses, for Approval of Service Payments to the Named Plaintiff,, and enter the Proposed Final Order and Judgment submitted contemporaneously with this memorandum.

19

Dated:  March 21, 2023                    Respectfully submitted,

**Klafter Lesser LLP**
*/s/ Seth R. Lesser*
Seth R. Lesser Bar No. SL5560
Christopher M. Timmel Bar No. CT9831
Two International Drive, Suite 350
Rye Brook, NY 10573
Telephone: (914) 934-9200
E-mail: seth@klafterlesser.com
E-mail: christopher.timmel@klafterlesser.com

**Scott & Winters Law Firm, LLC**
*/s/ Ryan A. Winters*
Joseph F. Scott
(*admitted pro hac vice*)
Ryan A. Winters
(*admitted pro hac vice*)
Kevin M. McDermott II
(*admitted pro hac vice*)
The Caxton Building
812 Huron Rd. E., Suite 490
Cleveland, OH 44115
Telephone: 216-912-2221
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com
kmcdermott@ohiowagelawyers.com

**Parmet PC**
*/s/ Matthew S. Parmet*
Matthew S. Parmet
(*admitted pro hac vice*)
3 Riverway, Ste. 1910
Houston, TX 77056
Telephone:  713-999-5228
matt@parmet.law

**Morgan & Morgan, P.A.**
*/s/ Andrew R. Frisch*
Andrew R. Frisch
8151 Peters Road, Ste. 4000
Plantation, FL 33324
Telephone:  954-318-0268
AFrisch@forthepeople.com

*Attorneys for Plaintiffs, Proposed FLSA
Settlement Collective, and Proposed Fed. R. Civ.*

*P. 23 Settlement Class and Subclasses*